BLAIR v. ST. LOUIS, H. & K. R. Co.[1]

*(Circuit Court, E. D. Missouri.   October 2, 1885.)*

1. MORTGAGES—FORECLOSURE—FINAL DECREE—UPSET PRICE.
    Where a railroad is to be sold under a final decree in foreclosure proceedings the decree should name an upset price large enough to cover costs, and all allowances made by the court, receiver's certificates and interest, liens prior to the bonds, amounts diverted from the earnings, and all undetermined claims which will be settled before the confirmation and sale.

2. SAME—DIVERSIONS FROM CURRENT EARNINGS.
    All earnings diverted to the payment of interest on receiver's certificates made payable out of the *corpus* of the mortgaged property, or to the payment of costs or allowances in the foreclosure suit, or any other matter not properly operating expenses, must be returned to the current earnings fund, and applied to the payment of claims made payable therefrom.

3. SAME—STATUTORY LIENS.
    Statutory liens should be paid before mortgage bonds.

4. SAME—EQUITABLE LIENS—BONDS.
    Equitable liens ordered payable solely out of earnings should be paid after mortgage bonds.

In Equity.

For reports of previous opinions and orders delivered in this case, see 19 Fed. Rep. 861; 20 Fed. Rep. 348; Id. 351; 22 Fed. Rep. 471; Id. 769; 23 Fed. Rep. 521; Id. 523; Id. 524; Id. 704; 24 Fed. Rep. 148; Id. 539.

*W. C. Larned* and *Theodore G. Case,* for complainant.
*John O'Grady,* for the receiver.

---

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

*D. P. Dyer, James Carr,* and *George Reynolds,* for intervenors.

BREWER, J., (*orally.*) The complainant in this suit desires a decree of foreclosure at the present term, and the form of a decree was presented to us a few days ago. Sundry questions in reference thereto have been argued. We have examined the form proposed, and in a general way think it correct; but in respect thereto we make these observations:

*First.* The decree may be entered forthwith. There are some questions as yet unsettled, but they can be adjusted after the decree is formally entered with the reservations that we propose to have incorporated in it. The sooner the sale is made the better for all parties, the court included.

*Second.* As a second proposition, an upset price must be named, and that price must be large enough to cover the costs and allowances made by the court in the foreclosure, such as master's, receiver's, and counsel fees; also large enough to cover all the receiver's certificates and interest; large enough to cover all liens prior to the bonds, and any amount heretofore diverted from the earnings, as I shall indicate hereafter, and a margin for similar items which may accrue up to the date of the confirmation. Thus the upset price will cover all those claims which are undetermined, but which will be settled before the confirmation and sale. Of course, counsel are aware that the matter submitted yesterday I cannot decide without some time to examine. That is claimed to be a lien, and the upset price will be so large that if it is declared to be a lien it can be paid out of the proceeds of the sale. The upset price must be large enough to cover the receiver's certificates, because they are obligations which the court has placed on that property, and it does not propose to let the property go out of its hands until they are provided for. In many states foreclosures of mortgages are attended with an appraisement, and the property must bring a certain proportion of that appraised value; and so we, in harmony with that idea, think an upset price should be fixed. The exact sum I am unable to state this morning, because it depends on some computations which I have not had time to make.

*Third.* All statutory liens will be paid before the bonds. The decree will so provide. The law makes them prior, and they must be paid before the bonds.

*Fourth.* Equitable liens which are ordered payable solely out of the earnings of the road will be paid after the bonds. Those equitable liens which have not been adjudged payable out of the *corpus* of the property, and in which no equity has been shown that justifies the court in saying that notwithstanding these prior bonds—this prior secured debt—the property must first answer for them; as to them they will be paid after the bonds are paid.

*Fifth.* The receiver's account of operating expenses must be restated, and all amounts for interest on receiver's certificates, costs

and allowances in the foreclosure suit, and any other matters not properly operating expenses, will be deducted, and such sums applied in payment of the equitable liens named in the fourth paragraph. I do not mean to say that the receiver has acted improperly; I think he did perfectly right in the matter. Out of the money in his hands he paid the interest on these receiver's certificates, and thus preserved their credit and value; but they were issued as liens upon the property. They stand in the same condition that the bonds did, and they and the interest on them, as well as the interest on the bonds, are to be paid out of the property itself; and when it comes to the sale of the property there should be a return of that which the receiver thus has diverted from the earnings. The same rule will apply if there has been any money taken out of the earnings of the road and used to pay the master or other officers of the court. That is not a part of the operating expenses of the road, and should not be counted in determining the net earnings. With these changes the decree can be prepared and signed forthwith.

*Mr. Larned.* May I ask the court to fix the amount of cash to be paid at the sale?

*The Court,* (TREAT, J.) We would like to look at that. The master and receiver can meet together in the light of what has occurred, and give us some idea as to the upset price and as to the cash deposit.

*Mr. Dyer.* May I inquire in reference to the last matter stated, that the earnings, if any, have been diverted for the payment of interest upon receiver's certificates, and any other diversion of the funds of the company, or of the earnings of the company, to the payment of the expenses, for instance, of master's fees, or the attorney's fees, or anything of that kind? I make the inquiry as to whether I understood the court aright in saying that the residue of those earnings would be returned to pay all equitable liens against the company.

*The Court.* Yes.

*Mr. Dyer.* In the reports of the master filed here, and on the statements made by the receiver himself, it appears that nine thousand and odd dollars of this money was taken out of the earnings of the road and applied to interest on those certificates. I wish to inquire, so that in the statement of account we may be reasonably certain of getting the money on those intervening claims allowed.

*The Court.* I don't know whether there is enough of that to pay off these intervening claims or not. If not, they will be paid *pro rata.*

*Mr. Dyer.* I understand there is quite enough to pay the claims allowed and declared to be intervening claims.

*The Court,* (TREAT, J.) That was the reason of the suggestion made in regard to it, that the master and the receiver get together and make a separation of that matter. The last master's report shows

between $15,000 and $16,000, including statutory liens and those other demands. Now, if there is a diversion of that amount out of the earnings, you are not hurt at all. He has to put that in the upset price, and if that occurs you will be paid.

*Mr. Carr.* Will the master be ordered to take an account of this matter, and ascertain?

*The Court.* It was suggested that the master and the receiver should act together, and make that separation, which they can do.

*Mr. Carr.* There is testimony to show that there was a diversion of the earnings to the building of the 28 miles of new road south, or between $20,000 and $30,000. Mr. Walker testified to that in one of the intervening claims.

*Treat, J.* Built by whom—the receiver?

*Mr. Carr.* By Blair and Taylor.

*Treat, J.* That is involved in your Fogg case.

*Mr. Case.* There is one proposition I would like to state.

*Mr. Carr.* Hold on till I get through.

*Mr. Case.* I thought you were through; we never know when you are done.

*Mr. Carr.* I see you don't. What I wish to say is that Mr. Walker, superintendent of the road, testified to the diversion of from $20,000 to $30,000, put in that road in the way of permanent repairs, and perhaps in building a portion of the road. Now, I think these other creditors, some of those not standing in the category of equitable liens, as well as those that stand in the category of equitable liens, they are to be paid out of the net earnings, I understand from the decree, as settled; but there are some general creditors who have had their claims allowed as creditors at large, which are subsequent to the bondholders, and I think that diversion of the earnings ought to be appropriated to those general creditors whose claims have been allowed, and I would like for information to inquire of the court when the matter ought to be presented. This diversion was prior to the appointment of the receiver, the court will understand.

*Mr. Case.* There has been no report on any diversion.

*Mr. Carr.* There is testimony to that effect.

*Mr. Case.* That will open up the whole case.

*Mr. O'Grady.* There was some testimony taken, but when I proposed to take counter-testimony, Judge CARR said he didn't propose to consider that testimony in the case.

*Treat, J.* What is the character of the claims you refer to?

*Mr. Carr.* They are for money loaned and advanced, execution judgments paid, and all that.

*The Court.* They are general claims of creditors at large?

*Mr. Carr.* Yes.

*The Court.* If they have their judgments, and are entitled to them against the corporation, and there is a surplus, you will come in behind everybody else.

*Mr. Carr.* In the supreme court of the United States, in the case of *Burnham* against *Bowen*, [4 Sup. Ct. Rep. 677,] where there was a diversion of the earnings, it was decided the creditors at large had the right to come in and get payment to the extent of the diversion, and those creditors have their claims allowed; and I would ask whether they are not entitled to that, after the equitable liens shall have been satisfied,—whether it wouldn't be proper for the master to go into an inquiry as to the extent of the diversion?

*The Court.* The proper way will be for you to file some motion so as to get it in tangible shape before the court.

*Mr. Carr.* Yes; but I wish to call the attention of the court now to it, so that the matter may be understood, and then I will present it in tangible shape.

*Mr. Larned.* There is nothing on record here in regard to that; it should have been here before any such question is acted upon. There is no question of this sort suggested on the record at all, and it seems to me rather late for gentlemen to come in now with this matter; I do not understand there is any such question suggested for argument.

*The Court.* Let him file his motion, and bring the question up in some shape.

*Mr. Case.* In regard to one proposition, the receiver tells me he has been taking money out of the receiver's certificate fund to replace money which he used for the payment of interest on the receiver's certificates. Now, if it appears that there has been a diversion of $9,000 or $12,000 from the earnings, which he has used for interest on the receiver's certificates, if it shall appear between now and the sale that that money has been improperly taken out of the receiver's certificate fund to apply towards the operating expenses, I do not see that there can be any diversion as to that.

*The Court.* Let the master make a report as to what was done.

*Mr. Case.* I wish to state this for the reason that the employes have been paid out of the earnings; the receiver has taken money from the receiver's certificate fund, and there has been no diversion as a matter of fact; and if it shall appear that that money has been taken indiscriminately from the receiver's certificate fund to pay the operating expenses, I do not understand that the money has to be applied towards the payment of these equitable liens.

*The Court.* We can tell better about that when we get the facts.

*Mr. Dyer.* I suppose, in reference to this matter, it will be well enough for the court to look at the original petition in the case, asking that an order for issuing so many receiver's certificates might be issued.

*The Court,* (TREAT, J.) The order in regard to receiver's certificates is distinct in its terms as to what purposes the proceeds should be applied. It was necessary to keep this a going concern, and in order to do so it was for the benefit of the bondholder, as well as a duty to

the sovereign whose franchise you desired to operate, that it should be kept in proper condition. Hence the authority was given. Now, if, in the course of operations, for the purposes of convenience, one fund was exchanged with another and reimbursed, that will be a matter, when we come to it, to adjust. We cannot do it now until we have the report.

*Mr. Case.* That I wish to explain. We claim that this money must go back to the certificate account, and that it will appear, and that will be determined between now and the sale.

*Treat, J.* Or, if the upset price is large enough to cover it, it may be determined afterwards.

---

On the twentieth of October, 1885, the Hon. DAVID J. BREWER, C. J., and the Hon. SAMUEL TREAT, D. J., being present, the court ordered the following decree of foreclosure and sale to be entered:

This cause having this day been brought on to be heard upon the original bill of complaint herein as amended, filed on the seventh day of February, A. D. 1884, and amended on the first day of June, A. D., 1885, heretofore taken as confessed by and against the defendants, the St. Louis, Hannibal & Keokuk Railroad Company, William D. McLean, M. R. K. Biggs, William Van Ness, Thomas P. McAllister, W. F. Oglesby, Michael Friel, J. B. Dunbar, Thomas Johnson, Joseph Henderson, James Henderson, George Ware, John Hostetter, T. H. Bacon, and H. B. Leach, assignees; W. D. McLean, James D. Pitt, T. C. Saffell, collectors; William C. Downing, John Tudor, Homer S. Carver, James B. Carver, Francis J. Bailey, James J. Tisdale, John J. McCune, W. H. Edwards, Owen R. Whitten, Ralls County Branch Railroad, Lewis Thomas, George Hodges, William Bailey, George W. Jett, Charles E. Porter, collectors; John B. Haden, Cassmer Sachs, William Lauber, Anna McCormick, Patrick Nagle, Louisa Brisco, Reid Alexander, William Miller, Edward E. Ayers, H. F. Hiscon, Richard Dalton, Larne Jones, Michael Jones, Louisa S. Pickett, James P. Watson, May McAllister, Willie Temple, D. C. McAllister; and upon the answers of Josiah Fogg, Daniel M. Dulaney, Gustave Sachs, Frank Bezzenberger, F. G. Holber, Joseph Raney, Annie Murphy, Fritz Wuelburn, Petersburg Coal Company, Mary E. Wilson, Elizabeth F. Strode, William H. Dulaney, Jesse H. McVeigh, Hannah Wilson; and upon the intervening petitions filed herein, and the pleadings and proofs therein; and upon the report of B. Gratz Brown, Esq., master in chancery of this court, which report bears date the twenty-fifth day of May, A. D. 1885, and was made in pursuance of the orders of this court heretofore entered in this cause, referring it to the said master in chancery to take proof herein and report the same to this court, together with the amount due the complainant, and said master's finding therein, which said master's report was filed herein on the first day of June, A. D. 1885; and upon the proofs in said cause filed with said master's report, and upon the confirmation by this court of said master's report, and all the matters and things therein contained, the court being now fully advised in the premises,—it is ordered, adjudged, and decreed that the said master's report be, and the same is hereby, confirmed and ratified in all respects.

And thereupon the court doth adjudge that the material allegations in said bill of complaint, as amended, contained, and set forth, are true, and that the defendant the St Louis, Hannibal & Keokuk Railroad Company did, on the first day of August, A. D. 1877, make, execute, and deliver, and cause to be

recorded in all the counties through which the said road passes, the mortgage, or deed of trust, to De Witt Clinton Blair, as trustee, for the purpose of securing an issue of bonds to the amount of $1,600,000. And the court further finds that there were issued of the said authorized amount of $1,600,000 of bonds only $981,000 of said bonds, being bonds numbered from 1 to 981, both inclusive, each for the sum of $1,000. And the court further finds that of these 981 bonds of $1,000 each, so issued under said mortgage, and secured by the said mortgage, 920 bonds of $1,000 each have been produced and proved before the said master in chancery, 424 of said bonds being owned by John I. Blair, and 428 of said bonds being owned by the executors of the estate of Moses Taylor, deceased, and 68 of said bonds proved by other parties, as follows: John S. Ely, $10,000; Walter B. Douglas, $8,000; William Greene, $8,000; St. Nicholas Bank, $3,000; Frank J. Mather, $2,000; Frank J. Mather, trustee, $10,000; National Bank of the Republic, $5,000; Edward M. Greene, $2,000; New York Warehouse & Security Company, $14,000; J. O. Stephens, $3,000; and Robert Halsey, $3,000; and that the remaining 61 bonds out of the 981 bonds secured by said mortgage, as above stated, are outstanding in the hands of unknown parties, and have not yet been produced in evidence in this court. And the court further finds that the holders of said bonds, upon default being made in the interest coupons thereto attached, did make due and proper demand upon the trustee in the said mortgage to foreclose the same, and that such demand was made prior to the commencement of this suit. And the court further finds that the amount of interest to April 1, A. D. 1885, due upon the 424 bonds presented and proved by the said John I. Blair is $140,035; that the amount of interest to the same date due upon the 428 bonds proved on behalf of the executors of the estate of Moses Taylor, deceased, is $141,890; that the amount of interest to the same date due on the 10 bonds proved by John S. Ely is $3,815; that the amount of interest to the same date due on the 8 bonds proved by Walter B. Douglas is $3,325; that the amount of interest to the same date due on the 8 bonds proved by William Greene is $3,080; that the amount of interest to the same date due on the 3 bonds proved by the St. Nicholas Bank is $315; that the amount of interest to the same date due on the 2 bonds proved by Frank J. Mather is $210; that the amount of interest to the same date due on the 10 bonds proved by Frank J. Mather, trustee, is $1,050; that the amount of interest to the same date due on the 5 bonds proved by the National Bank of the Republic is $525; that the amount of interest to the same date due on the 2 bonds proved by Edward M. Greene is $210; that the amount of interest to the same date due on the 14 bonds proved by the New York Warehouse & Security Company is $4,410; that the amount of interest to the same date due on the 3 bonds proved by J. O. Stephens is $315; and that the amount of interest to the same date due on the 3 bonds proved by Robert Halsey is $315; and the court finds that the total amount due upon the said bonds proved by the said several parties, as hereinbefore recited, and the interest thereon to the said April 1, A. D. 1885, and upon the said 61 bonds outstanding, is the sum of $1,280,495; and that there is also due upon the said 61 bonds interest to an amount not yet proven in this case, and that there is further due interest at 7 per cent. upon the principal sum of $981,000 from the first day of April, A. D. 1885, up to the date of this decree. And the court hereby adjudges and decrees that the principal of said bonds, together with the interest thereupon, as above stated, is hereby declared and decreed to be due and payable in accordance with the provisions of said mortgage.

And it further appears to this court that the persons owning the said 61 outstanding bonds not proved herein are unknown, and that this suit was instituted in behalf of the holders of all said bonds secured by the said mortgage, and that the rights, interests, and equities of the said bondholders who have not appeared or been made parties or intervened herein can be fully

secured and preserved by the decree of this court herein without requiring the owners of the said bonds to be made parties hereto. And the court further finds that Ervin C. Case, who was, on the seventh day of February, A. D. 1884, by a decree of this court, appointed receiver of the said St. Louis, Hannibal & Keokuk Railroad Company, has, in pursuance of a decretal order of this court, entered herein on the eleventh day of March, A. D. 1884, as such receiver, expended the sum of $278,000 for the purposes in said decretal order specified, and has from time to time, under the authority given in pursuance of said decretal order, issued certificates of indebtedness as such receiver for moneys advanced and loaned to him for such purpose, and that there is now due and outstanding, and unpaid of such receiver's certificates so issued as aforesaid, the sum of $278,000, which certificates are of the dates, tenor, and amounts as shown by the said master's report, together with interest thereon in accordance with the terms of said order. And the court further finds that the said receiver's certificates are, by the said decretal order of this court last mentioned, made a first lien upon the property, real and personal, of the said railroad company.

It is therefore, and upon motion of counsel for the said complainants, ordered, adjudged, and decreed, and this court, by virtue of the power and authority in it vested, doth order, adjudge, and decree that the said defendant, the St. Louis, Hannibal & Keokuk Railroad Company, pay, or cause to be paid, to the said complainant or his solicitors, or to the master heretofore appointed in this cause, or into the registry of the court, on or before the eighth day of December, A. D. 1885, the respective sum or sums of money so decreed and adjudged to be due to the complainant, as such trustee, upon the bonds and interest coupons so held by said Blair and the executors of the estate of Moses Taylor and others heretofore named as aforesaid, and upon the said 61 outstanding bonds in the hands of unknown parties and accruing interest thereon, together with the said amount adjudged to be due upon the said receiver's certificates, with interest thereupon in accordance with the terms thereof, and also all demands heretofore or that may be adjudged against said St. Louis, Hannibal & Keokuk Railroad Company before said eighth day of December, 1885, and also the costs of suit taxed in said cause, and all fees and expenses allowed in said cause; and in case of such payments being made, the said bonds and coupons shall be thereupon surrendered to the said St. Louis, Hannibal & Keokuk Railroad Company, and also the said receiver's certificates, and the said suit shall thereupon be dismissed; which said aggregate sums of money, together with the interest thereupon, are hereby declared to be a lien and charge upon all the property, real and personal, of said railroad company, described in and conveyed by the said mortgage or deed of trust set forth in the said bill of complaint, or which has since the date of said mortgage been acquired by the said railroad company, or by the said receiver, and hereinafter more specifically described.

And it is further ordered, adjudged, and decreed that in default of such payment by the said railroad company, or by some of the other defendants in said suit, all the right, title, interest, and equity of redemption of the said St. Louis, Hannibal & Keokuk Railroad Company, or of any of the said defendants in and to the said property described in said mortgage, or which has been since the date thereof acquired by the said E. C. Case, receiver, shall be sold by or under the direction of B. Gratz Brown, special master in chancery of this court, together as one property, and not as separate parcels, and in the manner hereinafter directed, in order to satisfy the amount due as aforesaid, the costs of this proceeding, and the said several sums herein decreed to be paid, or so much thereof as such property will bring, and that said B. Gratz Brown, special master, make such sale in accordance with the course and practice of this court, and that at such sale the complainant, or any of the parties or intervenors in said cause, may become the purchasers; that the

said sale under this decree shall be at public auction to the highest bidder, but that no bid for said property shall be received of a less amount than $370,000; that the sum of $35,000 shall be paid in cash at the time of sale to said master, and the balance as hereinafter provided, when said sale (which shall be made in St. Louis, in the state of Missouri, at such time and place as said B. Gratz Brown, special master, shall in the notice of such sale appoint) shall be confirmed by the court; that the notice of such sale shall be given by said B. Gratz Brown, special master, by advertisement thereof daily, six times in each week for six successive weeks preceding the date of the sale, in two daily newspapers in the English language of general circulation, published in the city of St. Louis, to-wit, the *Missouri Republican* and the St. Louis *Globe-Democrat*, and also once a week for five successive weeks in the *Railroad Gazette*, of New York city, and the *Railway Age*, of Chicago.

And it is further ordered, adjudged, and decreed that after the payment to the said B. Gratz Brown, special master, of the said sum of $35,000 in cash, of the sum to be paid by the purchaser at the said sale, the said B. Gratz Brown, special master, may receive from the said purchaser, as part of the balance of the sum bid at such sale, in lieu of cash, any of the outstanding and unpaid receiver's certificates aforesaid, for the full face value thereof, together with any interest which may at the time of such sale be due thereupon.

And it is further ordered, adjudged, and decreed that out of the purchase money received by the said B. Gratz Brown, special master, from said sale, he shall pay,—*First*, the costs of this suit, together with the cost and expense of executing this decree; *second*, the said B. Gratz Brown, special master, shall pay to Walter C. Larned and Theodore G. Case, solicitors for the complainants, the sum of $5,000 each; *third*, the said B. Gratz Brown, special master, shall pay to De Witt C. Blair, the trustee herein, for his services and disbursements as trustee, as provided by the terms and provisions of said mortgage, the sum of $4,800. The said B. Gratz Brown, special master, shall then also pay to E. C. Case, receiver herein, the sum of $4,500, and to John O'Grady, solicitor for said receiver, the sum of $2,500, and shall retain for himself, as master's fees, the sum of $5,000, and shall pay over the balance of the proceeds of said sale to the clerk of this court, who shall apply the same under the direction of this court. (1) To the payment of the amount of the said receiver's certificates outstanding and unpaid, which said receiver's certificates shall be first paid in full, principal and interest, out of the proceeds of said sale; (2) to the payment of any amounts which shall have been decreed and adjudged by this court to be prior and paramount as statutory liens to the lien of the said mortgage, and to the payment of such equitable liens ordered by this court to be paid out of earnings as shall be found chargeable upon the proceeds of sale, in accordance with the decision of this court made heretofore in regard thereto, the court hereby reserving said last-mentioned payment for further consideration and determination; (3) to the payment of the said 981 bonds, secured by the said mortgage, together with the interest thereon; and if the proceeds of said sale, after the payment of costs, expenses, and fees, as aforesaid, and of all outstanding receiver's certificates, with interest, as aforesaid, and of all claims adjudged by this court to be prior and paramount as statutory or equitable liens, be not sufficient to pay said bonds, principal, and interest, the said remaining proceeds, after payment of the claims, as above described, shall be divided *pro rata* among the entire 981 bonds, and the amount which each bond shall thus become entitled to shall be credited as a payment upon the said bonds, and, upon the confirmation of the said sale, the said bonds shall be received in payment of the bid of the said purchaser, provided the said purchaser shall offer the said bonds in payment of his bid for such amount for each bond as shall equal the amount of credit to be made as a payment upon each bond by reason of the application of the proceeds of sale as aforesaid. And in case of the presentation and surrender of the said receiver's

certificates, bonds, and coupons in payment of the said bid, the said clerk shall mark on each certificate, bond, and coupon so surrendered the amount paid thereon, and deposit the same in his office; and in case the amount of such proceeds of the sale shall be more than sufficient, after payment of all said costs and expenses, to pay the entire amounts due on the said receiver's certificates, principal and interest, and the entire amounts due upon the claims adjudged by the said court to be prior and paramount in lien to the lien of the mortgage sued upon, and after payment of the said 981 bonds, and the over-due coupons attached thereto, and of the interest at 7 per cent. on the said principal sum of $981,000 from April, A. D. 1885, up to the date of sale, then the overplus shall be paid to the said St. Louis, Hannibal & Keokuk Railroad Company, or to such parties or intervenors having judgments or liens against the said railroad company as this court shall direct, in such order of priority, and in such proportions as this court shall order.

And it is further ordered, adjudged, and decreed that if the moneys arising from the said sale shall be insufficient to pay the said costs and expenses, fees, and the amounts due upon the said receiver's certificates, and the demands theretofore allowed, and the amounts due upon the said bonds and coupons, as aforesaid, then in such case the said B. Gratz Brown, special master, shall specify the amount of such deficiency in his report of said sale, and that, upon the coming in and confirmation of said report, the said defendant, the said St. Louis, Hannibal & Keokuk Railroad Company, which is personally liable for the payment of the debt secured by the said mortgage and due to said complainant as aforesaid, shall pay to the said complainant the amount of such deficiency, with interest thereon, and said complainant shall have execution therefor. And the said clerk is hereby ordered and directed, on the receipt of any money from B. Gratz Brown, special master aforesaid, for distribution, to give notice, under the direction of said master, to the holders of said receiver's certificates, bonds, and coupons entitled to share in the distribution thereof, to present their receiver's certificates and demands, as aforesaid, and bonds and coupons, for payment of the respective amounts to be paid thereon by the said clerk, at some place to be designated in the said notice by publication for once a week for four successive weeks in the *Missouri Republican.*

And it is expressly ordered, adjudged, and decreed that the said receiver's certificates, together with the interest thereupon, shall, in any event, be paid first out of the proceeds of said sale, after deducting costs and expenses, as aforesaid; and such receiver's certificates, together with the interest thereupon, shall take precedence of any and all claims, whether heretofore passed upon by this court and adjudged to be prior in lien to said mortgage or not; and if the said property shall sell for the said sum of $370,000, or any greater sum, the said sale shall be absolute, and shall not be subject to any further claim or demand whatsoever on behalf of any intervening or other claimant claiming priority over said mortgage. It is the intent and meaning of this decree that the purchaser at said sale shall receive an absolute title to the property purchased, but shall be required to pay in cash, in addition to the cash payment hereinbefore mentioned, before he shall be entitled to use the said bonds towards the payment of his said bid, such amount as shall be necessary to pay the above-described prior claims, to the extent of the bid of such purchaser, and no further.

And it is further ordered, adjudged, and decreed that upon the completion and confirmation by the court of any sale made under and in pursuance of this decree, the said B. Gratz Brown, special master, shall make, execute, and deliver to the purchaser or purchasers of the said property a good and sufficient deed of conveyance in fee-simple, which deed shall specify the property so purchased, and the sum paid therefor.

And it is further ordered, adjudged, and decreed that the defendants, and

v.25F,no.5—16

all persons claiming by, through, or under them, since the commencement of this suit, be forever barred and foreclosed from all equity of redemption and claim of, in, and to, the said premises, or any part thereof, unless the amount, so due, as aforesaid, are paid in accordance with the provisions of this decree before the said sale. And at the time of the execution of the said deed the said E. C. Case, receiver, shall thereupon make, execute, and deliver to the said purchaser or purchasers a good and sufficient deed of conveyance in fee-simple of any and all property of the said railroad company vested in, or standing in the name of, the said receiver, or to which said receiver has in any way acquired title.

And it is further ordered, adjudged, and decreed that upon the execution and delivery of the conveyance or conveyances, as aforesaid, the said purchaser or purchasers, his or their representatives or assigns, be let into the possession of the said mortgaged premises so conveyed to him or them and that any of the parties in this cause who may be in possession of the said premises, or any part thereof, and any person who, since the commencement of this suit, has come into possession of them, or either of them, on the production of the said B. Gratz Brown's (special master) deed of conveyance, and a certified copy of the order of this court confirming the said sale and conveyance, shall surrender possession thereof to such purchaser or purchasers, their representatives or assigns, and, on refusal so to do, will be considered in contempt of this court.

And it is further ordered that the said B. Gratz Brown, special master, make report to this court of his actings and doings in the premises with all convenient speed after said sale shall have taken place.

The property hereby directed to be sold, which has been reduced to, and is now in the actual possession of, the receiver, is as follows, viz: All the right, title and equity of redemption of the said St. Louis, Hannibal & Keokuk Railroad Company, or of the said E. C. Case, receiver, or of any of the said defendants in and to all and singular the railroad of the said St. Louis, Hannibal & Keokuk Railroad Company, as the same is now surveyed, laid out, and constructed, extending from the city of Hannibal, in the state of Missouri, to the town of Gilmore, in St. Charles county, in said state, a distance of $81\frac{3}{4}$ miles, more or less, including the road-bed, stations or station houses, depot grounds, rails, ties, fences, bridges, viaducts, and culverts, and all other buildings and structures, as well as engine-houses, and machine and other shops, used in connection with said railway, and all the machinery and tools and fixtures therein; and also all the franchises of the said railway company, as at present existing, together with the franchises of the said railroad company, with reference to any extension of its present line, as specified in the charter; also all the supplies, materials, tools, personal property, fixtures, and appurtenances belonging to, or in anywise connected with, or appertaining to, the said road; also all rolling stock, locomotives, tenders, passenger, freight, stock, and milk cars of and belonging to said road, or purchased by the said receiver.

The court hereby expressly reserves for further consideration all matters not herein expressly provided for.