## GELFERT, EXECUTOR, *v.* NATIONAL CITY BANK OF NEW YORK.

No. 740. Argued April 3, 4, 1941.—Decided April 28, 1941.

*Mr. George Link, Jr.* for petitioner.

*Mr. Barney B. Fensterstock* for respondent.

224

Mr. Justice Douglas delivered the opinion of the Court.

This action was brought by respondent to foreclose a mortgage made in December, 1932, by Carpenter. At that time § 1083 of the New York Civil Practice Act provided that the amount of the deficiency judgment was to be measured by the residue of the debt remaining unsatisfied after a sale of the mortgaged property and the application of the proceeds pursuant to the directions contained in the judgment. In November, 1938, a judgment of foreclosure and sale was entered for $18,401.25, and in December, 1938, the foreclosure sale was held at which the property was purchased by respondent's nominee for $4,000. The referee, appointed by the court to sell, reported a deficiency which after the inclusion of taxes, fees and expenses was computed at $16,162.12. Respondent moved to confirm the referee's report of sale and asked that a deficiency judgment be entered for that amount. Petitioner took exceptions to the report and made a cross-motion to have the court fix the value of the property for the purpose of determining the amount of the deficiency judgment on the ground that the sale

price was "wholly inequitable and unconscionable." A new § 1083[1] (L. 1938, ch. 510), effective April 7, 1938, provides in substance that the court in determining the amount of a deficiency judgment should, on appropriate motion, "determine, upon affidavit or otherwise as it shall direct, the fair and reasonable market value of the mortgaged premises" and should deduct from the amount of the debt the "market value as determined by the court or the sale price of the property whichever shall be the higher." The right to recover any deficiency is made de-

[1] That section provides:

"Judgment for deficiency; limitation. If a person who is liable to the plaintiff for the payment of the debt secured by the mortgage is made a defendant in the action, and has appeared or has been personally served with the summons, the final judgment may award payment by him of the whole residue, or so much thereof as the court may determine to be just and equitable, of the debt remaining unsatisfied, after a sale of the mortgaged property and the application of the proceeds, pursuant to the directions contained in such judgment, the amount thereof to be determined by the court as herein provided. Simultaneously with the making of a motion for an order confirming the sale provided such motion is made within ninety days after the date of the consummation of the sale by the delivery of the proper deed of conveyance to the purchaser in all cases where the sale is held after the date this section as hereby amended takes effect, and in all cases where the sale was held prior to the date this section as hereby amended takes effect and said sale has not heretofore been confirmed, then within ninety days from the date this section as hereby amended takes effect or within ninety days after the date of the consummation of the sale by delivery of the proper deed of conveyance to the purchaser, regardless of whether the sale was held prior or subsequent to or on the date this section as hereby amended takes effect, the party to whom such residue shall be owing may make a motion in the action for leave to enter a deficiency judgment upon notice to the party against whom such judgment is sought or the attorney who shall have appeared for such party in such action. Such notice shall be served personally or in such other manner as the court may direct. Upon such motion the court, whether or not the respondent appears,

pendent on the making of such a motion. The court denied petitioner's cross-motion [2] and directed the entry of a deficiency judgment for $16,162.12. The judgment of the Appellate Division denying respondent a deficiency judgment because it had not made a motion for one under the new § 1083 (257 App. Div. 465, 13 N. Y. S. 2d 600), was reversed by the Court of Appeals, which held, one judge dissenting, that the new § 1083, as applied to mortgage contracts previously made, violated the contract clause of the Federal Constitution. 284 N. Y. 13, 29 N. E. 2d 449. We granted the petition for certiorari because of the important constitutional question which was raised.

As noted by the Court of Appeals, the measure of a deficiency under the new § 1083 is in substance the same as that prescribed by the New York moratory deficiency

---

shall determine, upon affidavit or otherwise as it shall direct, the fair and reasonable market value of the mortgaged premises as of the date such premises were bid in at auction or such nearest earlier date as there shall have been any market value thereof and shall make an order directing the entry of a deficiency judgment. Such deficiency judgment shall be for an amount equal to the sum of the amount owing by the party liable as determined by the judgment with interest, plus the amount owing on all prior liens and encumbrances with interest, plus costs and disbursements of the action including the referee's fee and disbursements, less the market value as determined by the court or the sale price of the property whichever shall be the higher. If no motion for a deficiency judgment shall be made as herein prescribed the proceeds of the sale regardless of amount shall be deemed to be in full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceeding shall exist. . . ."

[2] An affidavit of a real estate broker submitted by petitioner in support of his cross-motion stated that in his opinion the fair market value of the property was $11,000. An affidavit of an appraiser submitted by respondent in opposition stated that in his view the fair market value of the property was $6,500. The property was assessed by New York City for tax purposes at $15,000.

judgment act—§ 1083–a of the Civil Practice Act. The latter section was sustained by this Court under the contract clause of the Federal Constitution in *Honeyman* v. *Jacobs*, 306 U. S. 539. But the Court of Appeals said that the new § 1083, unlike the moratory deficiency judgment act, is not addressed to a declared public emergency, is unrestricted in its application,[3] "concerns merely the private contract relationship of the parties to a real property mortgage," is not "designed for the relief of urgent public needs," is not "conditioned upon any equitable factor," leaves "no room for the play of any equitable consideration," benefits "every mortgagor irrespective of the character or amount of his investment," and burdens "every mortgagee no matter what his necessities." The Court pointed out that, under previously existing statutes of New York, the liability for a deficiency was to be finally determined by a judgment of foreclosure and sale, that the "subsequent docketing of a deficiency judgment was a merely clerical act," and that the deficiency was to be ascertained by a sale and "not by the estimates of witnesses or other less satisfactory evidence." It held that that system of foreclosure "entered into the engagement of the present parties and created and defined the legal and equitable obligations of their contract." It also pointed out that, unlike the situation in *Richmond Mortgage & Loan Corp.* v. *Wachovia Bank & Trust Co.*, 300 U. S. 124, there remained under the laws of New York no remedy available to the mortgagee which was "substantially coextensive" with that afforded by the old § 1083, since, though an action at law for the debt might lie, the judgment debtor's equity of redemption could not be sold under an execution upon that judgment, and since the right to bring a second action to recover a defi-

[3] The moratory deficiency judgment act did not apply to mortgages or connected agreements dated on or after July 1, 1932. See 284 N. Y. 13, 16–17; 29 N. E. 2d 449.

ciency resulting on a foreclosure sale, if it existed at all under the new legislation, was drastically restricted. Accordingly, it held that in light of such cases as *Barnitz* v. *Beverly,* 163 U. S. 118, the new § 1083 could not be applied to mortgage contracts previously made, without violation of the contract clause of the Federal Constitution.

We take a different view.[4]

The formula which a legislature may adopt for determining the amount of a deficiency judgment is not fixed and invariable. That which exists at the date of the execution of the mortgage does not become so embedded in the contract between the parties that it cannot be constitutionally altered. As this Court said in *Home Building & Loan Assn.* v. *Blaisdell,* 290 U. S. 398, 435, "Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order." And see *Voeller* v. *Neilston Warehouse Co.,* 311 U. S. 531. It is that reserved legislative power with which we are here concerned.

The control of judicial sales of realty by courts of equity and by legislatures in order to prevent sacrificial prices has a long history. Weiner, Conflicting Functions of the Upset Price, 27 Col. L. Rev. 132, 133, *et seq.* In chancery sales in England during the eighteenth century, there developed the practice of opening the bidding, prior to confirmation, on an offer to advance the price 10 per cent. *Graffam* v. *Burgess,* 117 U. S. 180, 191. That practice, much criticized by Lord Eldon, was gradually supplanted by reserved bidding—in the first instance by equity (*Jervoise* v. *Clarke,* 1 Jac. & W. 388) and subsequently by stat-

---

[4] We are concerned here solely with the application of this statute to a situation where the mortgagee purchases the property at foreclosure sale. We intimate no opinion on its constitutionality as applied to the case where the mortgagee is not the purchaser.

ute. Sale of Land by Auction Act, 1867, 30 & 31 Vict. c. 48, § 7; *Graffam* v. *Burgess, supra,* p. 191; 1 Daniell, Chancery Practice (7th ed. 1901) pp. 879–880. Though the early English rule of advance bidding found little foothold in this country, reserved bidding has its counterpart here in the occasional utilization by equity courts of the upset price in mortgage foreclosures. *Blair* v. *St. Louis, H. & K. R. Co.,* 25 F. 232; *Pewabic Mining Co.* v. *Mason,* 145 U. S. 349; 2 Bonbright, Valuation of Property, pp. 849, *et seq.;* Stetson *et al.,* Some Legal Phases of Corporate Financing, Reorganization and Regulation (1927), p. 202. And it is quite uniformly the rule in this country, as in England, that while equity will not set aside a sale for mere inadequacy of price,[5] it will do so if the inadequacy is so great as to shock the conscience or if there are additional circumstances against its fairness, such as chilled bidding. *Cocks* v. *Izard,* 7 Wall. 559; *Graffam* v. *Burgess, supra; Ballentyne* v. *Smith,* 205 U. S. 285. Beyond that, a number of states by statute have endeavored to prevent property going for a song at judicial sales. Provisions that the property shall not be sold at less than a designated percentage of its appraised value, and requirements that a stated percentage of the appraised value above the sales price must be credited on the debt, are illustrative. 3 Jones, Mortgages (8th ed. 1928) §§ 1695 *et seq.*, 2 Bonbright, Valuation of Property, pp. 839 *et seq.*

We mention these matters here because they indicate that for about two centuries there has been a rather continuous effort, either through general rule or by appeal to the chancellor in specific cases, to prevent the machinery of judicial sales from becoming an instrument of oppression. And, so far as mortgage foreclosures are con-

---

[5] But see *Suring State Bank* v. *Giese,* 210 Wis. 489; 246 N. W. 556; *Wilson* v. *Fouke,* 188 Ark. 811; 67 S. W. 2d 1030; *Teachers' Retirement Fund Assn.* v. *Pirie,* 150 Ore. 435; 46 P. 2d 105.

cerned, numerous devices have been employed to safeguard mortgagors from sales which will, or may, result in mortgagees collecting more than their due. The variety of formulae which has been employed to that end is ample evidence not only of the intrusion which advanced notions of fairness have made on the earlier concern for stability of judicial sales but also of the flexibility of the standards of fairness themselves. Underlying that change has been the realization that the price which property commands at a forced sale may be hardly even a rough measure of its value. The paralysis of real estate markets during periods of depression, the wide discrepancy between the money value of property to the mortgagee and the cash price which that property would receive at a forced sale, the fact that the price realized at such a sale may be a far cry from the price at which the property would be sold to a willing buyer by a willing seller, reflect the considerations which have motivated departures from the theory that competitive bidding in this field amply protects the debtor.

Mortgagees are constitutionally entitled to no more than payment in full.[6] *Honeyman* v. *Jacobs, supra.* They cannot be heard to complain on constitutional grounds if the legislature takes steps to see to it that they get no more than that. As we have seen, equity will intervene in individual cases where it is palpably apparent that gross unfairness is imminent. That is the law of New York. 284 N. Y. 13, 20; 29 N. E. 2d 449. And see *Fisher* v. *Hersey,* 78 N. Y. 387. But there is no constitutional reason why in lieu of the more restricted control by a court of equity the legislature cannot substitute a uniform comprehensive rule designed to reduce or to avoid, in the run of cases, the chance that the mort-

[6] As to the bankruptcy power see *Wright* v. *Union Central Life Ins. Co.,* 311 U. S. 273, and cases cited.

gagee will be paid more than once.  Cf. *Suring State Bank* v. *Giese,* 210 Wis. 489; 246 N. W. 556.  Certainly under this statute it cannot be said that more than that was attempted.  The "fair and reasonable market value" of the property has an obvious and direct relevancy to a determination of the amount of the mortgagee's prospective loss.  In a given case the application of a specified criterion of value may not result in a determination of actual loss with mathematical certitude.  But "incidental individual inequality" is not fatal.  *Phelps* v. *Board of Education,* 300 U. S. 319, 324.  The fact that men will differ in opinion as to the adequacy of any particular yardstick of value emphasizes that the appropriateness of any one formula is peculiarly a matter for legislative determination.  Certainly, so far as mortgagees are concerned, the use of the criterion of "fair and reasonable market value" in cases where they obtain the property for a lesser amount holds promise of tempering the extremes of both inflated and depressed market prices.  And so far as mortgagors are concerned, it offers some assurance that they will not be saddled with more than the amount of their obligations.  To hold that mortgagees are entitled under the contract clause to retain the advantages of a forced sale would be to dignify into a constitutionally protected property right their chance to get more than the amount of their contracts.  *Honeyman* v. *Jacobs, supra.*  The contract clause does not protect such a strategical, procedural advantage.

In conclusion, the statute in question, like the one involved in *Richmond Mortgage & Loan Corp.* v. *Wachovia Bank & Trust Co., supra,* p. 130, "cannot fairly be said to do more than restrict the mortgagee to that for which he contracted, namely, payment in full."  Here, as in that case, the obligation of the mortgagee's contract is recognized; the statute does no more than limit

"that right so as to prevent his obtaining more than his due." *Id.*, p. 130. To be sure, the mortgagee retained in that case an alternative remedy, while in the instant one the Court of Appeals has said that under New York law there remained no alternative remedy "substantially coextensive" with that which had been removed. But it is clear from *Honeyman* v. *Hanan,* 302 U. S. 375, that a requirement that the right to a deficiency judgment should be determined in the foreclosure proceeding, or that a mortgagee is not entitled to a deficiency judgment unless he moves for one, raises no substantial federal question. As stated by this Court in that case (302 U. S. at p. 378), the Federal Constitution does not prevent the states from determining, on due notice and opportunity to be heard, "by what process legal rights may be asserted or legal obligations" enforced. The principles of those cases are applicable here. The fact that an emergency was not declared to exist when this statute was passed does not bring within the protective scope of the contract clause rights which were denied such protection in *Honeyman* v. *Jacobs, supra.* See *Home Building & Loan Assn.* v. *Blaisdell, supra.*

Respondent points out that earlier decisions of this Court have struck down under the contract clause, as respects contracts previously made, a state statute requiring judicial sales to bring two-thirds of the amount of the appraised value of the property. *Bronson* v. *Kinzie,* 1 How. 311; *McCracken* v. *Hayward,* 2 How. 608. And see *Gantly's Lessee* v. *Ewing,* 3 How. 707. Those cases, however, have been confined to the special circumstances there involved. *Home Building & Loan Assn.* v. *Blaisdell, supra,* pp. 431–434. We cannot permit the broad language which those early decisions employed to force legislatures to be blind to the lessons which another century has taught.

The judgment is reversed and the cause is remanded to the New York Supreme Court for proceedings not inconsistent with this opinion.

*Reversed.*