## St. John's Reformed Church v. Neth et al.

Z. T. Silvis, for plaintiff.

Paul J. Abraham, for defendants.

McWHERTER, J., June 23, 1943.—In this case plaintiff had issued a scire facias sur judgment. The matter is before the court on defendants' rule to quash the writ and have defendants relieved of all liability on the judgment, alleging failure of plaintiff to comply with certain provisions of the Deficiency Judgments Act of July 16, 1941, P. L. 400.

Plaintiff relies on the case of Beaver County B. & L. Assn. v. Winowich et ux., 323 Pa. 483, which held that the so-called Mortgage Deficiency Judgments Act of January 17, 1934, P. L. 243, was unconstitutional in that as applied to mortgages it violated article I, sec. 10, of the Constitution of the United States, which

provides that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . .".

Defendants rely on the case of Gelfert, Exec., v. National City Bank, 313 U. S. 221, decided by the United States Supreme Court on April 28, 1941, which held that a deficiency judgment act passed by the State of New York, quite similar to the Pennsylvania Act of July 16, 1941, P. L. 400, was constitutional. Defendants further rely on the case of Fidelity-Philadelphia Trust Co., Surviving Trustee, v. Allen et al., Liquidating Trustees, 343 Pa. 428, decided November 28, 1941, which held that the Deficiency Judgments Act of 1941 does not conflict with the contract clause of the State Constitution. In the latter case, Mr. Justice Stern, who wrote the opinion in Beaver County B. & L. Assn. v. Winowich et ux., supra, wrote a separate opinion concurring with the majority of the court. In the Winowich case, although the contract clause of the Pennsylvania Constitution was raised, Mr. Justice Stern in his opinion held the 1934 act unconstitutional as a violation of the Federal Constitution and expressly stated that the second, third, and fourth constitutional objections raised by counsel for defendant would not be considered and they were not passed upon. The contract clause of the Pennsylvania Constitution was the third constitutional objection relied upon in that case.

This case involves a personal judgment entered on a bond. John W. Neth and Dale A. Neth, his wife, on September 27, 1927, borrowed $4,000 and gave to plaintiff a bond and mortgage for $3,000, and gave to one Peter A. Moore a bond and mortgage on the same premises for $1,000. Plaintiff herein entered its bond at no. 1664, February term, 1932. The bond of Peter A. Moore was entered at no. 275, May term, 1936. At no. 172, May term, 1936, Florence S. Taylor and Celia A. Miller, administrators of Peter A. Moore, issued a fieri facias on the judgment at no. 275, May term, 1936, and

on the same day plaintiff herein at no. 173, May term, 1936, issued a fieri facias on its judgment entered at no. 1664, February term, 1932. Pursuant to these writs plaintiff herein, and the said administrators of the estate of Peter A. Moore, bought the land described in the mortgage at sheriff's sale, each taking their proportionate interest in the land, namely, plaintiff herein acquiring an undivided three-fourths interest, and said administrators of Peter A. Moore acquiring an undivided one-fourth interest. Since that time there has been considerable litigation between plaintiff and said administrators which has been passed upon by the Supreme Court. The matter of the judgment entered by Peter A. Moore's administrators need not be referred to any further in this opinion as it is not before us.

After the sheriff's sale, plaintiff herein issued a scire facias sur its judgment at no. 1664, February term, 1932, and on February 7, 1937, judgment was entered for $3,000 with interest and costs. A fieri facias issued on the latter judgment precipitated certain litigation which need not be referred to in this discussion. When plaintiff issued the scire facias at the above number sur the judgment entered at no. 1664, February term, 1932, defendants obtained the rule above referred to. The sole question before the court is the constitutionality of the Deficiency Judgments Act of 1941. Counsel for the plaintiff relies on Beaver County B. & L. Assn. v. Winowich et ux., supra, without specifically stating in his brief whether he believes the 1941 act is in violation of the Federal Constitution or the State Constitution, but from his oral argument he apparently takes the position that the act is in violation of both.

We are inclined to hold that the act in question violates neither. Section 7 of the Act of July 16, 1941, P. L. 400, provides as follows: "The plaintiff or plaintiffs shall file all petitions in accordance with section one and section two of this act not later than six months after the sale of any real property: Provided, however,

That, if the sale occurred prior to the effective date of this act, the plaintiff shall file such petition within six months after the effective date of this act. In the event no petition is filed within such period, the debtor, obligor, guarantor and any other person liable, directly or indirectly, to the plaintiff or plaintiffs for the payment of the debt shall be released and discharged of such liability to the plaintiff or plaintiffs." Plaintiff failed to file its petition as directed by the act within six months of the effective date of the act.

The Deficiency Judgments Act of 1941 provides a method of procedure. Individuals make contracts but the sovereign provides the means whereby those contracts may be enforced. All contracts are dependent for enforcement not only on the law as it stands on the date of the contract but on the law as it may appear when the time comes for enforcement.

In this case, on the date of the execution of the bond and mortgage, the mortgagees apparently considered the real estate subsequently sold at sheriff's sale to be worth in excess of $4,000. It was sold for $1. (The fact that plaintiff acquired but a three-fourths interest does not alter the situation. The principle is the same.) To permit plaintiff to buy in the property for $1 and still retain its judgment for the whole debt, interest, and costs is absolutely unjust and unconscionable.

In practically all of the States equity has from time to time intervened to relieve mortgagors in these situations. The mortgagee is entitled to collection of his debt and no more. He is certainly not entitled to collect twice.

The Deficiency Judgments Act of 1941 does not alter or impair the contract between the parties. The act does not reduce by one penny the amount which any creditor may collect. It was passed for the express purpose of preventing judgment creditors and mortgagees from collecting more than would be justly due them. It is an act amending the procedure by which the plaintiff might use the enforcement machinery furnished by the Commonwealth.

We quote from the opinion of Mr. Justice Douglas in Gelfert, Exec., v. National City Bank, supra (p. 231):

"The formula which a legislature may adopt for determining the amount of a deficiency judgment is not fixed and invariable. That which exists at the date of the execution of the mortgage does not become so embedded in the contract between the parties that it cannot be constitutionally altered. As this Court said in *Home Building & Loan Assn. v. Blaisdell*, 290 U. S. 398, 435, 'Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order.' And see *Voeller v. Neilston Warehouse Co.*, 311 U. S. 531. It is that reserved legislative power with which we are here concerned."

Mr. Justice Douglas then refers to the efforts by courts of equity and the numerous devices that have been employed from time to time to safeguard mortgagors from sales which will result in the mortgagees collecting more than their just due. He continues at page 233: "But there is no constitutional reason why in lieu of the more restricted control by a court of equity the legislature cannot substitute a uniform comprehensive rule designed to reduce or to avoid, in the run of cases, the chance that the mortgagee will be paid more than once. Cf. *Suring State Bank v. Giese*, 210 Wis. 489; 246 N. W. 556." At page 234: "To hold that mortgagees are entitled under the contract clause to retain the advantages of a forced sale would be to dignify into a constitutionally protected property right their chance to get more than the amount of their contracts. *Honeyman v. Jacobs*, [306 U. S. 539, 82 L. ed. 972, 59 Sup. Ct. 702] *supra*. The contract clause does not protect such a strategical, procedural advantage."

The contract clause of the Federal Constitution and the contract clause of the State Constitution are quite similar in nature. In Fidelity-Philadelphia Trust Co.,

Surviving Trustee, v. Allen, Liquidating Trustee, supra, the court in construing the Deficiency Judgments Act of 1941 rendered the following per curiam opinion (p. 430) :

"A majority, Mr. Justice Drew dissenting, agrees that, as applied to this case, the challenged statute may be held not to conflict with the contract clause of the state constitution, reaching that conclusion on the ground that it is desirable to preserve uniformity of construction of the contract clauses of both state and federal constitutions: compare *Gelfert v. National City Bank*, 313 U. S. 221.

"As the record does not involve the application of the Act to sales on judgments *in personam* made prior to its effective date, no opinion on that subject is expressed. See, however, *McCabe v. Emerson*, 18 Pa. 111; *Ladner v. Siegel (No. 4)*, 298 Pa. 487, 498, 148 A. 699, 702; *Memphis v. United States*, 97 U. S. 293, 296; *McCullough v. Virginia*, 172 U. S. 102, 123, 124; *Hodges v. Snyder*, 261 U. S. 600, 603; 30 Am. Jur. 898, section 146; 31 Am. Jur. 364, section 883; 16 C. J. S. 689, section 271a."

It is necessary in the instant case to go further. As this case involves a judgment in personam it is necessary in upholding the constitutionality of the Act of 1941 to hold that the same is constitutional as to judgments in personam entered prior to its effective date. It is to this classification that the act obviously was intended to apply. It is this class of judgment debtors which are most in need of the relief from oppression intended by the act. The United States Supreme Court, in Gelfert, Exec., v. National City Bank, supra, while referring in its decision specifically to mortgagees as judgment creditors, did not limit the application of the rule there laid down to judgments in rem. We are inclined to the view that the Supreme Court of Pennsylvania proposes to conform with the Federal rule.

Mr. Justice Stern (who, as above stated, wrote the opinion in the Winowich case) in his concurring opin-

ion referred to the fact that the Winowich case was in line with the current decisions passing upon the question in all the States except New York and that reliance was placed upon the rulings and opinions of the United States Supreme Court up to that time and that the principal aim was "to conform on this important constitutional problem to the decisions of that tribunal." He continues (p. 432) : ". . . it would seem obviously desirable that this court, while not bound, of course, in interpreting our State Constitution, to follow the views of the United States Supreme Court, should do so in this instance. For that reason I concur in the present decision."

Counsel for plaintiff has not specifically taken the position that the Act of 1941 is in violation of article III, sec. 7, of the Constitution of Pennsylvania, but the same question was raised, although not passed upon, in the Winowich case, and counsel in his oral argument appeared to rely generally on the Winowich case. The pertinent paragraph reads as follows:

"The General Assembly shall not pass any local or special law: . . . Regulating the practice or jurisdiction of, or changing the rules of evidence in, any judicial proceeding or inquiry before courts, aldermen, justices of the peace, sheriffs, commissioners, arbitrators, auditors, masters in chancery or other tribunals, or providing or changing methods for the collection of debts, or the enforcing of judgments, or prescribing the effect of judicial sales of real estate . . ."

This prohibition in the Pennsylvania Constitution would appear to be a more serious and valid objection to the constitutionality of the Act of 1941 than the contract clause of either Constitution.

To hold, however, that any change in our law respecting procedure as to judicial sales should not affect the enforcement of any contract entered into before the passage of such act would seem to be an unreasonable construction of this clause of the constitution. To fol-

low such strict interpretation would mean that the slightest change in procedure would give one class of plaintiffs one mode of asserting their rights and another class of plaintiffs a different mode of enforcing their rights depending on the date of the contract. The framers of the Constitution meant no such thing.

Mr. Justice Barnes, in his dissenting opinion in the Winowich case, commenting on the Act of 1934 as a mere change in procedural remedy, stated his view as follows (p. 516) : "The statute here is intended to regulate the remedy for the enforcement of the obligation, and not to impair the obligation itself. We have consistently held that a statute which affects remedial processes only does not impair contractual obligations: *West Arch B. & L. A. v. Nichols,* 303 Pa. 434. The present Chief Justice in the case cited (where was involved the constitutionality of the Act of May 6, 1929, P. L. 1557, permitting the sale of real estate without inquisition) thus stated the principle, (p. 440) : 'The Act does not violate the constitutional inhibition against impairing the obligations of contracts. It changes the mode of procedure or the remedy by eliminating a part of the requisites.' He said (quoting from *King v. The Security Co.,* 241 Pa. 547) : 'No person has a vested right in any course of procedure, nor in the power of delaying justice, or of deriving benefit from technical and formal matters of pleading . . . *and if a statute alters that mode of procedure, he has no other right than to proceed according to the altered mode.'* "

Had plaintiff followed the procedure outlined by the Act of 1941 it would have lost nothing. It merely would have been required to give a credit on the judgment for what the court would have determined to be the value of the land purchased by plaintiff as of the date of the sale. The fact that plaintiff failed to act by filing the petition required by the act places the blame for loss, if any, on the plaintiff's shoulders. The opportunity was there and plaintiff failed to avail itself

of the benefits provided by the act. We hold that the Deficiency Judgments Act of 1941 does not violate article I, sec. 10 of the Constitution of the United States, article I, sec. 17 of the Constitution of Pennsylvania, or the above-quoted paragraph of article III, sec. 7, of the Constitution of Pennsylvania.

### Decree

Now, June 23, 1943, after argument, and upon due consideration, all judges concurring, it is ordered, adjudged and decreed that the rule heretofore entered on plaintiff to show cause why the writ of scire facias issued in the above case should not be quashed be and the same is hereby made absolute.

It is further ordered, adjudged, and decreed that plaintiff shall within 60 days hereafter file a release of defendants named in the writ of scire facias from any and all liability directly or indirectly to plaintiff upon the judgment entered at no. 644, February term, 1937, and for the payment of the debt for which the same was recovered.