## ALLEN v. UNION TRANSFER CO.

### No. 3185.

Circuit Court of Appeals, Tenth Circuit.

Dec. 24, 1945.

634

N. E. Snyder and Louis R. Gates, both of Kansas City, Kan., for appellant.

Bernard T. Hurwitz, of Kansas City, Mo. (Jack W. Marer, of Omaha, Neb., on the brief), for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

On November 24, 1944, Ash Truck Lines, Inc., was adjudged a bankrupt in the District Court of the United States for the District of Kansas and thereafter the matter was duly referred to the referee in bankruptcy. The bankrupt filed its schedules, which, among other things, included a list of its creditors with their addresses. Two hundred forty creditors were listed. Thereafter, the referee, in accordance with § 58, sub. a, of the Chandler Act, 11 U.S. C.A. § 94, sub. a, caused a notice to be mailed to all creditors listed in the schedules at their respective addresses as listed, advising them that the first meeting of creditors would be held on December 18, 1944, at 10 o'clock, a. m., at the office of the referee in Topeka, Kansas, and that at that meeting a trustee would be elected or appointed and the assets of the bankrupt sold at public auction. The referee also caused the notice to be published as provided by § 58, sub. d, of the Chandler Act, 11 U.S.C.A. § 94, sub. d.

At the time and place stated in the notice, the first meeting of the creditors was had and a trustee was duly elected. The assets of the bankrupt were offered for sale. The only assets of any substantial value owned by the bankrupt were a Certificate of Convenience and Necessity issued by the Interstate Commerce Commission for certain truck line operations between Omaha, Nebraska, and Kansas City, Missouri, a Conforming Certificate issued by the State Corporation Commission of Kansas, and a Certificate of Convenience and Necessity issued by such Corporation Commission to operate intrastate lines in Kansas. Prior to the sale, these certificates had been appraised at $7,500 by an appraiser appointed by the referee. The highest bid was $4,250 made by the Union Transfer Company.[1] All creditors present approved the sale and the referee thereupon confirmed the sale. Union paid the purchase price in full within the time provided by the order of confirmation. Under the terms of the contract of sale, Union had six months in which to file applications with the Interstate Commerce Commission and the State Corporation Commission for transfer of the certificates. Union commenced the preparation of such applications and applications for temporary operating rights and made substantial expenditures on the faith of the sale. Thereafter, on January 6, 1945, Ed Mays deposited $6,250 with the trustee as a firm bid for the certificates. Thereafter, the trustee declined to transfer the certificates to Union.

On January 29, 1945, the Consolidated Builders Supply Company and the J. I. Case Company, having claims of $9 and $22.60, respectively, filed separate applications to set the sale aside, in which they set up that they were not listed in the schedules, did not receive any notice of the sale, and had no actual notice thereof; that a bona fide bidder had deposited $6,250 with the trustee as a firm bid for the certificates; that if the sale be set aside and the bids reopened, bids in excess of $6,250 for the certificates would be received by the trustee. On January 31, 1945, after a hearing on these applications, the referee set aside the sale and the confirmation thereof and directed the certificates to be offered again at public auction. The referee entered an order directing that a hearing be held to determine the amount, if any, necessary to be paid to Union in excess of the bid price of $4,250 to restore it to its former status. At the second sale, the highest bid was $9,050, made by Watson Bros. Transportation Company, Inc.[2] The certificates were struck off to Watson and the referee entered an order confirming the sale to it.

Union filed a petition for review. The trial court set aside the order confirming the sale to Watson, and entered its order confirming the original sale to Union.

---

[1] Hereinafter called Union.

[2] Hereinafter called Watson.

The referee found that the Supply Company and the Case Company had no actual knowledge of the bankruptcy proceedings until after January 1, 1945, and that the amount bid by Union at the original sale on December 18, 1944, was grossly inadequate.

The trial court adopted the findings made by the referee. The issue presented is one of law: Did the referee abuse his discretion in setting aside the original sale and the confirmation thereof?

■■■ A court of bankruptcy is a court of equity.[3] A proceeding in bankruptcy from the time of its commencement by the filing of the petition until the final settlement of the estate of the bankrupt is but one suit. A district court, for the purposes of its bankruptcy jurisdiction, is always open. It has no separate terms. The rule that a court may not vacate at a subsequent term an order made at a prior term has no application to a proceeding in bankruptcy. Proceedings in a bankruptcy suit at any time prior to its termination are open for re-examination upon application therefor in appropriate form; and any order made in the progress of the proceedings may be set aside and vacated upon proper showing made.[4]

■■■ A court of equity may set aside an order of sale either before or after confirmation when it appears that the same was entered through mistake, inadvertence, or improvidence.[5]

■■■ While a judicial sale will not be set aside on the ground of inadequacy of price alone, unless the inadequacy is so great as to shock the conscience of the chancellor, inadequacy of price, accompanied with other circumstances having a tendency to cause such inadequacy, or in-dicating any apparent unfairness or impropriety, will justify setting aside the sale. Such additional circumstances may be slight and insufficient in themselves to justify vacating the sale.[6] "The integrity of judicial sales is as important as their stability."[7]

Here, there was inadequacy of price and the confirmation took place immediately after the sale and no opportunity was afforded the two creditors who did not have notice to object. But there were no facts presented showing any unfairness or impropriety in the sale to Union or raising any doubt as to the integrity of the sale, and all of the creditors present approved the sale and agreed to its confirmation.

■■■ Notice of the sale was given in strict compliance with the statutory requirements. Jurisdiction of a bankruptcy court does not depend upon the correctness of the list of creditors in the schedules. Jurisdiction is acquired by the petition and adjudication and if the notices are published and served in accordance with the statutory requirements, the jurisdiction to proceed is not affected by failure of a creditor to receive notice.[8]

■■■ Section 94, supra, does not require notice to be given of a hearing on an application to confirm a sale.[9]

■■■ There being no circumstances throwing doubt on the integrity of the sale to Union, and the inadequacy of the consideration not being such as to shock the conscience of the chancellor, the order confirming the sale to Union should not have been set aside by the referee.

Affirmed.

BRATTON, Circuit Judge, concurs in the result.

3 Continental Illinois Nat. Bank & T. Co. of Chicago v. Chicago R. I. & P. R. Co., 294 U.S. 648, 675, 55 S.Ct. 595, 79 L. Ed. 1110; 8 C.J.S., Bankruptcy, § 21, p. 429.

4 Webster v. Barnes Banking Co., 10 Cir., 113 F.2d 1003, 1005.

5 Webster v. Barnes Banking Co., 10 Cir., 113 F.2d 1003, 1005.

6 Webster v. Barnes Banking Co., 10 Cir., 113 F.2d 1003, 1005; Gelfert v. Na-tional City Bank, 313 U.S. 221, 232, 61 S.Ct. 898, 85 L.Ed. 1299, 133 A.L.R. 1467.

7 Currin v. Nourse, 8 Cir., 66 F.2d 137, 140.

8 In re Archenbrown, D.C.Mich., 1 Fed. Cas. page 1084, No. 504; In re Stetson, D.C.N.Y., 22 Fed.Cas. page 1316, No. 13,-381; In re DeSoto Crude Oil Purchasing Corporation, D.C.La., 35 F.Supp. 1, 6, 7.

9 In re Nevada-Utah Mines & Smelters Corporation, D.C.N.Y., 198 F. 497, 499.