HORACE B. HORTON et al., Doing Business Under the Name of CHICAGO BRIDGE AND IRON WORKS, Plaintiffs, *v.* QUEENS COUNTY MACHINERY CORPORATION, INC., et al., Defendants.

(Supreme Court, Kings Special Term, August, 1917.)

Mechanic's lien — filing of — bankruptcy — priority — foreclosure — waiver.

Bankruptcy — liens — waiver.

Where three days after the completion of a building the owner became bankrupt, a notice of mechanic's lien filed by a materialman giving the name of the bankrupt as the name of the owner of the property is good.

A mechanic's lien filed within the ninety-days limit but not until the owner of the property had been adjudicated a bankrupt has priority over the claims of the trustee in bankruptcy, as the lien is created not by the act of filing it but exists at all times from the furnishing of materials or labor.

Where a mechanic's lien creditor of a bankrupt, in its proof of claim filed with the referee in bankruptcy, asserts its right to the lien, there is no waiver thereof.

Where such creditor accepted dividends from the bankrupt estate only after the trustee in bankruptcy, the creditors' committee and the defendants in an action to foreclose the lien for an unpaid balance due had stipulated in writing that the

acceptance of such dividends should be without prejudice to plaintiffs' claim, that their lien filed was a valid one, and to their right to enforce the same for the payment of the balance due, there was no waiver of the lien.

While in bankruptcy proceedings a secured creditor is not entitled to vote at a creditors' meeting the fact that through the fault or inadvertence of the referee or trustee a creditor is permitted to vote at such meeting when his lien has been asserted in his claim as filed is no waiver of the lien.

ACTION to foreclose a mechanic's lien.

R. M. S. Putnam and Louis W. Dinkelspiel, for plaintiffs.

Arthur P. Hilton, for defendant Queens County Machinery Corporation, Inc.

CROPSEY, J.   The plaintiffs seek to foreclose a mechanic's lien arising out of the furnishing of materials and labor in the construction of a building for the United States Metal Products Company. Three days after the building was completed the United States Metal Products Company filed a voluntary petition in bankruptcy.   At that time plaintiffs had been paid something on account, but there was a substantial balance unpaid.   Within a few days after the adjudication in bankruptcy the plaintiffs filed a mechanic's lien.   Later plaintiffs filed a claim with the referee in bankruptcy, stating in their claim that they had a mechanic's lien under the Lien Law of the state.   Still later trustees were appointed and subsequently sold the property in question to the defendant Queens County Machinery Corporation, Inc. The plaintiffs received dividends, but the circumstances connected with those payments will be stated later.   On the trial the defendants raised three points. All facts essential to plaintiffs' recovery, except as involved in these three points, were conceded.   1. The

defendants claim the lien is defective because it gives the name of the bankrupt as the name of the owner of the property. While this claim was made on the trial it apparently has been abandoned, for no reference is made to it in defendants' brief. It is impossible to understand what other name could have been inserted in the lien as owner. The lien was filed before the trustees were appointed, and of course it was impossible to guess who they would be. But even if they had already been appointed a lien filed stating that the owner was the bankrupt would have been perfectly good. *Gates & Co., Inc.,* v. *National Fair & Exposition Assn.,* 172 App. Div. 581–587; *Reedy Elevator Co.* v. *Monok Co.,* 171 id. 653. 2. The next question is whether a mechanic's lien, filed within ninety days after the completion of the work, but not until after the owner had been adjudged a bankrupt, has priority over the claims of the trustees of the bankrupt. While there have been decisions touching on this question, the exact point here involved apparently has not been decided since the 1910 amendment to the Bankruptcy Act. There have been decisions since that amendment holding that a mechanic's lien, filed under the circumstances existing in this case, is good when filed against public improvements, but the claim is that those authorities are not applicable. Formerly the rule was that, irrespective of bankruptcy, a mechanic's lienor was merely a creditor at large and had no rights until his lien was filed other than those of a general creditor. *Payne* v. *Wilson,* 74 N. Y. 348; *McCorkle* v. *Herrman,* 117 id. 297; *Stevens* v. *Ogden,* 130 id. 182. But since those decisions were rendered the rule has been changed. Now it is settled that such a lienor between the time of furnishing the labor or materials and the expiration of the time within which

3

his lien must be filed has an equitable lien that is good against an assignee for the benefit of creditors. He has " a preferential statutory right in the nature of an unperfected equitable lien " which cannot be defeated by the voluntary act of the party against whom it might be asserted. *Kane Co.* v. *Kinney,* 174 N. Y. 69. And such a lien is good as against a trustee in bankruptcy. *Crane Co.* v. *Pneumatic Signal Co.,* 95 App. Div. 53; affd., on opinion below, *sub nom. Crane Co.* v. *Smythe,* 182 N. Y. 545. And it is also good as against a trust mortgage given for the benefit of creditors. *American Mortgage Co.* v. *Merrick Const. Co.,* 120 App. Div. 150; affd., 190 N. Y. 526. These cases all recognize that a mechanic's lien is not created by the act of filing it, but that it exists at all times from the furnishing of the materials or labor, and that the filing of the lien merely preserves it. And this right of the holder of a mechanic's lien is upheld, although he did not actually file it until after the assignment for creditors had been made or the bankruptcy adjudged or the trust mortgage executed. Whether the decisions in these cases go any further than as stated is disputed. Some of the later cases contend that they do (*Matter of Grissler,* 136 Fed. Repr. 754–756), and others that they do not. *Behrer* v. *McMillan,* 114 App. Div. 450–454, affd, *sub nom. Behrer* v. *City & Suburban Homes Co.,* 191 N. Y. 530; *Parsons* v. *Curran,* 149 App. Div. 762. But we need not discuss those claims here. It is conceded that the plaintiffs' lien would have been good against the trustee and that plaintiffs would have been entitled to foreclose it but for the amendment of 1910 made to the Bankruptcy Act. That amendment added to section 47, subdivision A2, which prescribes the " duties of trustees," the following: "And such trustees, as to all property in the custody

or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies and powers of a judgment creditor holding an execution duly returned unsatisfied.'' This section of the Bankruptcy Act does not deal with the title of the trustee to the bankrupt's property, but only with the trustee's duties. The provisions relating to title are contained in section 70. The provisions of the amendment in. question plainly deal only with the question of remedy or procedure. The reason for the adoption of this amendment and the objects sought to be accomplished by it are rather generally agreed to both by text writers and decisions. These are said to be to overcome the effect of the decisions like *York Mfg. Co.* v. *Cassell,* 201 U. S. 344, and *Matter of New York Economical Printing Co.,* 110 Fed. Repr. 514, and to enable the trustee to attack secret liens created or transfers made by bankrupts which otherwise could not be attacked. Collier Bankruptcy (9th ed.), 659-661. The opinion in the York case states that a trustee '' stands simply in the shoes of the bankrupt '' and cannot attack the claims of those asserting liens which would be good against the bankrupt. This statement of the rule is put perhaps rather broadly and apparently has caused the decision to be misunderstood. The decision held that a conditional bill of sale not filed was good as against a trustee in bankruptcy, although the state statute said it was void as against creditors, but this was because the courts of that state had decided that the creditors referred to in the statute meant only those who before the contract was filed had seized the property on execution or attachment.

In other words, the *York* case merely decided that the bill of sale was good against the trustee because it would have been good in the state court against the creditors of the bankrupt. Even before the 1910 amendment a chattel mortgage or conditional sale which would not have been a valid lien as against the creditors of the bankrupt for want of record, or for other reasons, would not have been a valid lien against the bankrupt's estate. Bankruptcy Act, § 67-a. Under this provision a trustee in bankruptcy has been held to have a prior right to that of a holder of a chattel mortgage not filed, because such failure to file it made it invalid against the creditors under the state decisions. Lien Law, § 230; *Skilton* v. *Codington*, 185 N. Y. 80. This case was decided before the 1910 amendment, but it points out clearly the real ground of the decision in the *York* case. In this state a chattel mortgage not filed is void as against all creditors, although its validity can be attacked only by a creditor having obtained a judgment or lien. *Stephens* v. *Perrine*, 143 N. Y. 476. This holding is entirely different from that of the courts of the state referred to in the York decision. Under the authority of the *Skilton* case a trustee in bankruptcy in this state would not have priority over the vendee under a conditional sale not filed, because by our statute such instruments are void only against purchasers and mortgagees in good faith and not against creditors. Pers. Prop. Law, § 62. The amendment of 1910 was intended to give the trustee the status of a creditor holding a lien at the time the bankruptcy petition was filed. *Bailey* v. *Baker Ice Machine Co.*, 239 U. S. 268–275, 276; *Mergenthaler Linotype Co.* v. *Hull*, 239 Fed. Repr. 26–34. Under this amendment the trustee may elect to take the position that any creditor could have

taken, and so has only such rights as such creditor might have had. *Matter of Seward Dredging Co.,* 242 Fed. Repr. 225–227, 228; *Matter of Calhoun Supply Co.,* 26 Am. Bank. Rep. 528. Liens valid before the amendment were not rendered invalid by it. They are valid since the amendment the same as they were before it. " There is nothing in the amendment indicating that its purpose was to prescribe a rule by which the validity or priority of such liens is to be determined or enforced. In that respect the law is left untouched, and the validity and rank of the lien is now to be ascertained by the same applicable principles as obtained prior to the change." *Matter of Lane Lumber Co.,* 217 Fed. Repr. 550, 552, citing Loveland Bankruptcy (4th ed.), § 372, and affirming 210 Fed. Repr. 82. See, also, *Dellinger* v. *Waite-Thresher Co.,* 228 Fed. Repr. 506. With this understanding of the scope and meaning of the amendment it is not surprising to find decisions holding that since that amendment a conditional sale made in New York, though not filed, is good against the trustee in bankruptcy of the vendee, because it is good here against the bankrupt's creditors. *Mergenthaler Linotype Co.* v. *Hull,* 239 Fed. Repr. 26–34. And there are a number of decisions, since the amendment, holding that even equitable liens existing at the time of bankruptcy are not cut off but may be enforced against the bankrupt's estate. *Schoenherr* v. *Van Meter,* 215 N. Y. 548–552, 553. So also a vendor's lien, given to him by the state statute, has been upheld. *Matter of Lane Lumber Co.,* 217 Fed. Repr. 550. And the same holding has been made with respect to an artisan's lien. *Matter of McAllister-Newgord Co.,* 193 Fed. Repr. 265. And the rights of a mechanic's lienor who did not file his lien until after the adjudication in bankruptcy have been upheld since the 1910 amendment. *Hildreth Granite*

*Co.* v. *City of Watervliet*, 161 App. Div. 420; *Gates & Co.* v. *Stevens Construction Co.,* 220 N. Y. 38, 49, 50; *Gates & Co., Inc.,* v. *Nat. Fair & Exposition Association,* 172 App. Div. 581–590; Brandenburg Bankruptcy (1917 ed.), § 864. While the first two of these cases last cited dealt with mechanic's liens filed against public improvements, the principle underlying them is applicable to this case, in view of the decisions showing the purpose and intent of the amendment and of those construing it. Furthermore, the language of the Court of Appeals in the *Gates* case is very broad and comprehensive. It is this: '' The amendment of the Bankruptcy Law was not intended to enlarge the rights of a trustee as against lienors under our statute but to enable the trustee to avoid secret and unrecorded liens created by act of the bankrupt.'' 220 N. Y. 38, 50. In view of this last expression of the highest court of this state the language used in *Henderson* v. *Mayer,* 225 U. S. 631, 637, though uttered before the 1910 amendment, is still applicable: '' The statute was not intended to lessen rights which already existed, nor to defeat those inchoate liens given by statute of which all creditors were bound to take notice and subject to which they are presumed to have contracted when they dealt with the insolvent. Liens in favor of laborers, mechanics and contractors are of this character.'' The policy of the courts for many years has been to uphold, wherever possible, the rights of laborers and materialmen, and to enforce their claims. With this object in view our courts have held that a mechanic's lien, although not filed until after the assignment, was good against the assignee for creditors of a contractor, although the statute only provided that it was good against such an assignee of the '' owner.'' Lien Law, § 13; *Kane Co.* v. *Kinney,* 174 N. Y. 69. See, also, cases

collected in McKinney's Consolidated Laws of New York, book 32, Lien Law, bottom of p. 66, top of p. 67. And after the Court of Appeals had reaffirmed the holding that a receiver in supplementary proceedings, commenced before the filing of a mechanic's lien, had priority over the lienor (*Mulstein Co.* v. *City of New York,* 213 N. Y. 308; *McCorkle* v. *Herrman,* 117 id. 297), the legislature promptly amended section 13 of the Lien Law to overcome this decision and to give the mechanic's lienor the preference. Laws of 1916, chap. 507, § 7. Furthermore, by the same act a mechanic's lien was given priority over an attachment issued, or a money judgment recovered, upon a claim which in whole or in part was for materials furnished or labor performed or moneys advanced for the improvement of the real property in question, although such attachment or judgment was obtained before the filing of the lien. This change did not become effective till July 1, 1916, and so does not apply to this case, but it shows the trend of legislation to be for the protection of the interests of those having mechanics' liens. 3. The defendants' third contention is that the plaintiffs have waived their right to enforce their lien. This is predicated upon the contention that plaintiffs filed their claim with the bankruptcy court and accepted dividends the same as all the general creditors. Plaintiffs did file their claim, but in it asserted their right to the very lien now sought to be foreclosed. There was therefore no waiver involved in that act. They had a right to prove their claim without waiving their lien. Bankruptcy Act, § 57, subd. H; Collier Bankruptcy (9th ed.), 725. It is stated as a general rule that if a secured creditor proves his debt as an unsecured debt he thereby waives his security. Collier Bankruptcy (9th ed.), 726; *Ansonia Brass & Copper Co.* v. *Babbitt,* 74 N. Y. 395–

403, 405; *Matter of Fisk & Robinson,* 185 Fed. Repr. 974. But here the plaintiffs did not prove their debt as an unsecured debt. On the contrary, in their proof of claim they asserted their right to their lien for security. But it is claimed that the plaintiffs voted at a meeting of the creditors on the strength of their claim that was filed. Even if this is so it does not affect their rights. While a secured creditor is not entitled to vote at a creditors' meeting, and secured claims cannot be counted in computing the number of creditors or the amounts of claims, except as to the excess of such claims over the value of the security (Bankruptcy Act, § 56, subd. B; Collier Bankruptcy [9th ed.], 701), if he is permitted to vote it is due to the fault or inadvertence of the referee or trustee, but such participation when his lien has been asserted in the claim filed is no waiver of the lien. The acceptance of dividends, especially when it follows the filing of the claim without asserting the right to a lien, is usually quite conclusive that there has been a waiver. *Matter of Fisk & Robinson,* 185 Fed. Repr. 974. But in the instant case the facts concerning the acceptance of the dividends take it without the rule. The dividends here were accepted only after the trustees in bankruptcy, the creditors' committee, and the purchaser of the property is question — the present defendants — had stipulated in writing that the acceptance of such dividends should be without prejudice to the plaintiffs' claim that their lien filed was a valid lien, and to their right to enforce that lien for the payment of the balance due. The plaintiffs have given credit for all the dividends received and seek to forclose only for the balance unpaid. There was plainly no waiver of the plaintiffs' rights under these circumstances. Everybody interested in the estate of the bankrupt agreed that the

acceptance of the dividends should in no way defeat the plaintiffs' assertion of right to enforce their lien. Plaintiffs are entitled to judgment, with costs.

Judgment for plaintiffs, with costs.