## In re EASTERN OIL CO.

## LYNCH v. CENTRALIA OIL CO. et al.
### No. 8795.

Circuit Court of Appeals, Ninth Circuit.
Dec. 15, 1938.

Raphael Dechter and George A. Elstein, both of Los Angeles, Cal., for appellant.

Earl E. Moss and C. H. Hartke, both of Los Angeles, Cal., for appellees.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

The Referee in Bankruptcy denied the amended petition of Fay L. Wright as representative of the Centralia Oil Company for reclamation of personal property from the Receiver in Bankruptcy of the Eastern Oil Company, bankrupt. In the course of the proceedings the Receiver in Bankruptcy appears to have been succeeded by the Trustee in Bankruptcy, and this petition was considered as pending against such Trustee.

Upon a review the District Court, after a short statement, reversed this order in the following language: "The Referee's order will, therefore, be reversed with direction to him to grant the petition for reclamation after determining the rental value for the period of detention." This appeal is by the Trustee in Bankruptcy of the Eastern Oil Company from such order of the District Court.

■ It is conceded by all parties together with the District Court that "the findings of the Referee upon controverted facts will not be disturbed [Weisstein Bros. & Survol v. Laugharn, 9 Cir., 1936, 84 F.2d 419]." (quotation from the court's comment in making his order).

■ A Captain Libby was organizing a corporation which, when completed, was named "Eastern Oil Company." William Spriggs Brown, a bookkeeper, was assisting Libby. At or about the same time Libby was interested in two other corporations, "Centralia Oil Company", and "Sharby Oil Company", one or both of which had nearby oil "leases". We shall herein designate these corporations as "Eastern", "Centralia" and "Sharby". On the 14th day of August, 1936, and before the corporate entity of Eastern was complete, Brown, acting for Captain Libby or Eastern, purchased oil drilling machinery and equipment, hereinafter called the "equipment", from Lyon Supply Company, for a sum approximating $8,000, and paid in cash around $5,000. The bill of sale was made out in the name of Brown. A chattel mortgage, dated August 19, 1936, was given by Brown to a man by the name of Lockhart for the balance. This chattel mortgage was duly recorded.

Mr. C. E. Hartke, one of the principal witnesses and a well known Los Angeles attorney who had "taken care of some of the legal matters pertaining to transactions", related to the subject matter, narrated the history of the transactions. This narrative consists principally of conclusions, and in the main, so far as physical facts are concerned, appears to have been accepted by all parties as correct, or at least without attempt to refute or discredit it. To this there is one important exception, which will presently be pointed out.

From this recital we learn that Sharby and Eastern held adjoining leases. Captain Libby was active in an effort to develop these, was an officer of both companies, and was connected with Centralia. Centralia was producing oil and some of its production was pledged to develop either Sharby or Eastern. A Mr. Sharp, heavily interested in one of these companies, loaned Centralia sufficient money to take up the Eastern indebtedness and release Centralia from 'that burden.

A commercially unsuccessful well had been sunk on each of the Sharby and Eastern leases, but it was still thought that they were good oil properties. Money was needed for further exploration and was obtained by Centralia. Out of this money the balance of the purchase price of the oil machinery and equipment purchased in the name of Brown was paid. In this transaction the chattel mortgage was assigned to Fay L. Wright (assignment dated January 26, 1937) and Brown gave Wright a bill of sale covering such machinery and equipment, dated January 30, 1937.

Mr. Hartke testified on this subject as follows: "Mr. Wright actually did not advance that $3243.48. Mr. Sharp loaned that amount of money to the Centralia Oil Company. Mr. Sharp did not loan this money to the Centralia Oil Company for the purpose of advancing it to the Eastern Oil Company. This $3243.48 that was paid to Lockhart on account of the mortgage, was advanced by Mr. Sharp as a loan to the Centralia and was made the matter of an escrow, and from that escrow these different payments were made in order to clean up this situation. One of the payments that was made was the payment for this machinery."

The equipment was on the Eastern lease, and from the time Brown sold to Wright the latter kept a watchman at the place and had notices of his ownership posted upon the equipment.

Mr. Hartke in his recital refers to Mr. Brown as Eastern's dummy, and herein

is the questioned part of his testimony. Captain Libby followed Mr. Hartke on the witness stand and testified that Hartke was mistaken; that Brown was not acting for Eastern, but was acting for him (Libby) in the purchase of the equipment. He called attention to the fact that Eastern was not organized when the equipment was bought, and asserted that he (Libby) bought the equipment for himself and made the first payment therefor. No attempt is made to contradict this testimony, except, perhaps, inferentially by showing that the equipment was carried on the books of Eastern as an asset. Captain Libby stated that he had not realized this fact. He admitted that some of the checks regarding the transaction cleared through Eastern. The books of both Eastern and Centralia were kept in the same office by the same bookkeeper.

It will be seen from the above that not one cent of purchase price of the equipment came from Eastern, and that the title to the equipment was at no time in Eastern.

The Trustee in Bankruptcy bases his claim to the equipment upon the fact that it was placed upon the Eastern lease and was carried upon Eastern's books, and upon the unsubstantiated claim that Brown was Eastern's dummy. These circumstances lose their significance when related to the admitted facts.

The fact that we find the equipment upon the Eastern lease and find it carried upon Eastern's books, if unexplained, would be some evidence of ownership. However, such evidence is entirely destroyed by the undisputed evidence that Eastern did not buy it, paid nothing for it, never had title to it, and that prima facie all of this was noticed to the world by recordation of the chattel mortgage. There is no showing whatever that anyone was harmed or misled by any of the circumstances.

It would appear that no one has shown any right to question Wright's title, and since he admits that he is holding the title for the benefit of the Centralia Oil Company, he is entitled to his order for reclamation as its representative.

The claim that Brown was without authority to execute the chattel mortgage or the bill of sale cannot be maintained, for it is based upon the unestablished premise that Eastern was the owner of the equipment.

The Referee found: "that the said personal property and equipment was purchased from the Lyon Supply Company in the name of W. Spriggs Brown, who acted for and at the request of said Eastern Oil Company in purchasing said property; * * * that all of the payments on said chattel mortgage (referring to the chattel mortgage given by Brown on balance of purchase price of the equipment, which balance has been paid in full) were made by the Eastern Oil Company and that all of the payments constituting the purchase price of said personal property and equipment were made by the Eastern Oil Company. * * *"

We are of the opinion that no part of this finding was supported by any substantial evidence.

We do not understand the trial court's order to determine that damages have been sustained by the claimant, but that he is leaving that question to be determined by the Referee upon a proper hearing.

Affirmed.