764

**CARR v. SOUTHERN PAC. CO.**
No. 9983.
Circuit Court of Appeals, Ninth Circuit.
May 22, 1942.
Rehearing Denied July 23, 1942.

Louis J. Glicksberg and Francis P. Walsh, both of San Francisco, Cal., for appellant.

Ben C. Dey, A. G. Goodrich, and C. O. Amonette, all of San Francisco, Cal., for appellee.

Before WILBUR, HANEY, and STEPHENS, Circuit Judges.

WILBUR, Circuit Judge.

The Southern Pacific Company, appellee, is the holder of 592 bonds of the par value of $1,000 each, issued by the bankrupt. On May 15, 1940 the appellant filed a petition for an order directing the Southern Pacific Company to turn over to the trustee 296 of such bonds, with interest coupons attached, upon the ground that these bonds had become the property of the estate of the bankrupt by reason of certain transactions occurring before the referee on the 29th of April, 1940, at a hearing of the first meeting of the creditors to select a trustee in bankruptcy. The petition alleges that the appellee, to gain the privilege of voting half its claim in the election of a trustee, waived "one-half of its said securities and accruals thereunder, towit, one-half of $609,094," and that the referee consequently allowed the appellee to vote its claim of $609,094 in the amount of $304,-106.14. The appellee filed an answer denying that the appellant owned the bonds in

question and alleging that it did waive "its right to realize more than $304,547 in value from its security for said claim", and that it did vote the amount of $304,106.14 (half its claim, less a set-off of $439.86 existing in favor of the bankrupt).

The referee, upon the trial of the issues, found as facts:

"(2) That in consideration for its being permitted to vote, and as to which it did vote for a trustee of its own choosing, the claimant-respondent, in open court, waived its security shown by said secured proof of debt to the extent of $304,106.14, which said last mentioned amount was voted as an unsecured claim, as aforesaid;

"(3) That upon said claimant-respondent declaring said waiver, the official trustee of the herein bankrupt's estate, in behalf of said estate, became, ever since has been, and now is, the owner of 296 of said first mortgage bonds, each of the par value of $1,000.00 each, or an aggregate par value of $296,000.00, together with the accruals and unpaid interest coupons thereon in the additional par value sum of $8,106.14."

The referee consequently ordered that the 296 bonds, with coupons, be delivered to the trustee in bankruptcy as property of the bankrupt. The appellee petitioned the district court for review of the proceedings and order and the court sustained the contention of appellee and reversed the order of the referee. The trustee in bankruptcy appeals to this court from that order.

■ The appellee had a right under § 57, sub. e, of the bankruptcy act, 11 U.S.C.A. § 93, sub. e, to have allowed and to vote that portion of its secured claim of $609,094, which seemed to the referee to exceed the value of the property of the bankrupt hypothecated by the deed of trust to secure the bonds in question. The appellant admits this but claims that in order to secure this right to vote under § 57, sub. e, the procedure thereunder indicated must be followed and that inasmuch as there was no appraisal by the referee of the value of the security and no allowance of the claim as a partially secured debt, the appellant had no right to vote its claim except by surrendering the security and, consequently, that the appellee, by voting one-half of its claim, did in fact surrender one-half its security.

There are several difficulties which are involved in this position which we may state before making further reference to what actually occurred at the creditors' meeting.

■ It is true that a surrender of all the security for a claim would entitle the claim to be voted as an unsecured claim. In re Eagles, D.C., 99 F. 695, 697; Morrison v. Rieman, 7 Cir., 249 F. 97, 101; Petition of International Harvester Co., 6 Cir., 9 F.2d 299, 300. However, a surrender of half the security would still leave the entire claim secured, although less adequately, by the balance of the property hypothecated by the bankrupt. Thus, the appellee would not be entitled to vote any of its claim as unsecured even if it did in fact surrender half its security. Another difficulty is that if the agreement of the appellee was to surrender half its bonds to the trustee as the property of the trustee, there would be no claim, secured or unsecured, left for the appellee to vote, as to the bonds surrendered (Albert's Ex'rs v. Ziegler's Ex'rs, 29 Pa. 50; Licey v. Licey, 7 Pa. 251, 47 Am.Dec. 513; Paxton v. Wood, 77 N.C. 11), and the remainder of the bonds would still be secured.

The appellee filed a written waiver at the creditors' meeting. This written waiver is correctly construed by the district judge and is in accordance with the claim of the appellee that it merely surrendered the right to collect more than $309,547.14 from the property hypothecated to secure the bonds and described in the trust deed.

The appellant cannot, and does not, dispute the terms of the written waiver, or its interpretation, but contends that the colloquy between the referee and the attorney for the appellee at the creditors' meeting held to elect the trustee in bankruptcy resulted in the waiver which transferred the ownership in half the bonds to the trustee. The colloquy referred to is as follows:

"Mr. Goodrich: If your Honor please, I present here the claim of the Southern Pacific Company as the holder of bonds of this bankrupt in the amount of $609,094. There is a credit on that of $439.86, so that is $608,654.14. That is one claim. In regard to that claim, the Southern Pacific Company is to a certain extent a secured creditor, as those represent bonds of the bankrupt. However, I believe there is on file in this proceeding the affidavit of Mr. Piercey to the effect that the total value of the properties securing this bond issue is not over one-third of the issue, and

we claim the right to vote this claim of ours for fifty per cent of the amount of the claim.

"The Referee: Are you waiving as to the rest?

"Mr. Goodrich: If necessary we will, your Honor.

"The Referee: It is necessary if you are going to vote.

"Mr. Goodrich: Very well, I hereby file with your Honor the formal waiver as to the right to obtain greater payment on these bonds than $304,547. Take $439.86 off that to arrive at the correct figure.

"The Referee: Let's get the exact amount.

"Mr. Goodrich: Therefore, we offer to vote the claim for $304,106.14."

■ The argument is that the inquiry by the referee "Are you waiving as to the rest?", and the following statements by the attorney for the appellee and by the referee resulted in this transfer of title because in the absence of the allowance of the claim and the fixing of the value of the security by the referee, as required by § 57, sub. e, supra, the claim could not be voted except as an unsecured claim, and the attorney for the appellee, in voting without such allowance and fixing of value, must have so understood and intended, and the referee must likewise have known and intended that one-half the claim should be rendered unsecured by reason of the waiver.

■ We have already pointed out the difficulties arising from such a contention. We think it too clear for argument that the appellee and the referee believed that the value of the security back of the bonds probably lay somewhere between 33% and 50% of the par value of the bonds and that as the appellee was willing to confine its vote to the smaller unsecured balance there was no necessity for a formal appraisal of the property or allowance of the claim. Section 57, sub. e, does not require either prior to the vote; on the contrary, it expressly authorizes an informal estimate by the referee as a basis for voting.

■ We see no reason to doubt that when the referee in the case at bar allowed the appellee to vote its claim to the extent of $304,106.14 he as effectually determined that to be the unsecured part of the claim on file as if he had made a formal order fixing the amount and allowing the claim.

■ The meaning of the referee and of the appellee is made even clearer by the formal written waiver and the written claim of the appellee which were before the referee at the time of the colloquy. In any event, voting by a secured creditor who has proved his secured claim as such does not constitute a waiver of his security (Horton v. Queens County Machinery Corp., 101 Misc. 31, 166 N.Y.S. 662), although such voting is improper and cannot be given effect. In re Austin Resort & Land Co., 12 F.Supp. 459.

■ The referee seemed to be of opinion at the time he rendered the turnover order now under consideration that the bonds themselves were securities and that when the appellee waived one-half of the security it intended to transfer one-half of the bonds to the bankrupt estate. This was error. Bonds, while described in some aspects such as the Blue Sky laws, as securities, are not securities within the meaning of § 57, sub. e, supra, but are mere evidences of indebtedness. The security referred to in § 57, sub. e, supra, is the value of the property subject to lien of a mortgage or covered by the trust deed. In re Blizard, D.C., 20 F. Supp. 481, 482; Ivanhoe Bldg. & Loan Ass'n v. Orr, Trustee, 295 U.S. 243, 55 S.Ct. 685, 79 L.Ed. 1419; Bankruptcy Act, § 1, sub. 28, 11 U.S.C.A. § 1, sub. 28. Moreover, it is clear that the appellee has no security that it can surrender. The trustee holds the property hypothecated and declines to relinquish it. What the appellee agreed to do was to pay over or surrender to the trustee any sum it realizes from its security on its bonds over and above 50% of the face value thereof. It will be time enough to enforce this promise when it is shown that the trustee in the trust deed has realized more than 50% from the security to pay on the bonds. It was stated at the time of the argument in this court that most of the property has been sold by the trustee named in the trust deed. No claim is made that more than 50% of the face value of the bonds has been or is likely to be realized.

■ In answer to the appellee's contention that the order of the referee deprives appellee of the entire amount due under the bonds ordered surrendered, the appellant asserts that notwithstanding the surrender of bonds in compliance with the order of the referee the appellee would still retain the right to collect the amount of the

bonds from the general estate of the bankrupt as an unsecured claim. This argument seems to be based on the theory that the deed of trust becomes a part of the bond just as the promise to pay the face of the bond is a part thereof and these two provisions can be severed in such fashion that the lien evidenced by the bond may be transferred to the trustee while the promise to pay remains with the appellee. This position is not tenable. The security for the bonds is not the deed of trust but the property thereby conveyed. The appellee did not own such property or any part of it but merely had the right to compel the trustee in the deed of trust to realize from the property a sufficient sum to pay its bond if that were possible.

 It should be noted that the appellant claims. that the findings of the referee were made on a controverted question of fact and, hence, cannot be disturbed. This is not the fact or the law. The statement in our decision in Re Eastern Oil Co., 9 Cir., 100 F.2d 341, 342, that, "It is conceded by all parties * * * that 'the findings of the Referee upon controverted facts will not be disturbed,'" is relied upon to support this claim. This court cited our decision in Weisstein Bros. & Survol v. Laugharn, 84 F.2d 419, 9 Cir., where the rule with reference to the power of the court is more fully stated. It was unnecessary in the Eastern Oil Company case to discuss or consider the matter, in view of the concurrence of the parties in the rule as stated. However, the rule relied upon has no application for in the case at bar no question of credibility of witnesses appearing before the referee is involved. On the contrary, the parties agree as to exactly what occurred and what was said, differing only as to the effect of the language used. The district judge and the judges of this court are in as good a position to interpret such language as was the referee. Stewart v. Ganey, 5 Cir., 116 F.2d 1010, 1012.

The order of the district judge is affirmed.

HANEY, Circuit Judge (concurring).

I concur in holding that the referee was without power to order appellee to deliver the 296 bonds to appellant.

The bonds in question were not securities within the meaning of § 57, sub. e, of the Bankruptcy Act. Furthermore, the appellee did not have possession of the security held under the mortgage, such security being held by a bank named as trustee in the trust indenture. An order requiring appellee to turn over such security would be and was erroneous and impossible of compliance.

I do not agree with the discussion by the majority of the question as to whether or not appellee waived one half of its security or of the question concerning an alleged appraisal by the referee; discussion of both questions being unnecessary here, for in no event can the referee's order be sustained for the reasons above stated.