### KNETZER v. LARKIN.
### No. 84, Docket 21451.

United States Court of Appeals
Second Circuit.

Argued Dec. 7, 1949.

Decided Dec. 29, 1949.

Sidney Paymer, Jamaica, New York, for appellee.

Leo Blatt and I. Robert Bassin, Jamaica, New York, for appellant.

Before L. HAND, SWAN and FRANK, Circuit Judges.

FRANK, Circuit Judge.

On her own petition, Frances J. Larkin was adjudicated a bankrupt. The trustee for her creditors objected, on six grounds, to her being discharged of her debts. The referee overruled the Trustee's objections, but the District Court reversed the Referee and denied a discharge to Mrs. Larkin.

She now appeals from the order of the District Court.

█ In Specification 6, the Trustee charged that Mrs. Larkin had failed to explain satisfactorily what had happened to large sums of money she had received shortly before bankruptcy. Such a failure is, of course, a bar to discharge. 11 U.S.C.A. § 32, sub. c(7). A Referee's findings may be upset only when they are "clearly erroneous", General Order 47, 11 U.S.C.A. following Section 53, when he alone has an opportunity to see and hear the witnesses. Morris Plan Industrial Bank v. Henderson, 2 Cir., 131 F.2d 975, 976–977. But we believe that, in dismissing Specification 6, the Referee clearly erred and that the District Court must therefore be affirmed.

Mrs. Larkin lived with Bertram E. Reed as man and wife—although they had gone through no marriage ceremony—for about sixteen years until, in January, 1944, he left her. During the last nine of those years, they lived in a house which Mrs. Larkin owned on Aberdeen Road in Queens County, New York. After Reed left, Mrs. Larkin decided to sell the house. On April 3, 1944, a Mr. Pohl agreed to buy it; he gave her $1,500 as a binder. Shortly after, Pohl, claiming to find some defect in the house, demanded his money back. Failing to get it, he brought suit. Mrs. Larkin then arranged to sell the property to Eve Abrams; on July 21 title was taken and payment made. The total payment was $7,497.24, covering the house and some personal property, but, to protect Eve Abrams against Pohl's claim, $2,800 of the payment was put in escrow. Mrs. Larkin received, then, $4,697.24. This, added to other money she had, gave Mrs. Larkin at least $5,-653.24 in cash on July 21. Six days later, she paid $2,545.46 for another house on Grand Central Parkway. Title was taken in the name of Janet Schramm, Mrs. Larkin's daughter. On September 1, 1944, Janet Schramm deeded the house to Mrs. Larkin, and on October 18, Mrs. Larkin conveyed the property to her brother, Michael A. Dombek.

Although Mrs. Larkin admits that she had $5,653.24 in cash on July 21, she claims that she did not have enough money six days later to pay for the Grand Central Parkway house. She asserts that she borrowed the needed funds from her brother, Dombek. Since he had supplied the funds, her explanation continues, it was only reasonable for her to turn the house over to him a few months later.

Between July 21 and July 27, Mrs. Larkin had a number of expenses. But she would have been nearly or wholly able to pay for the Grand Central Parkway house herself if she had not—so she says—given $3,000 to Bertram Reed during that week. Mrs. Larkin at one point said she gave Reed the $3,000 to satisfy a mortgage on the Aberdeen Road house. But this was after the house had been sold, and title had passed, without any deduction for the mortgage. Moreover, Mrs. Larkin's attorney had received a valid satisfaction of the mortgage some months before the date on which Mrs. Larkin claims she gave Reed $3,000 for the same satisfaction.[1]

When confronted with this difficulty in her chain of explanation, Mrs. Larkin fell back on claims that Reed had threatened her life, and that she feared that in some vague way he would interfere with the already-consummated sale of the house on Aberdeen Road.

At still another point, Mrs. Larkin testified that she gave Reed, not the lump sum of $3,000, but $1,000 out of the $1,500 she got from Pohl, and $2,000 more from the proceeds of the sale to Abrams. And this tale she contradicted by yet another: i. e., that she gave Reed the entire $1,500 she received from Pohl. Moreover, she testified that she had last seen Reed in April or May of 1944, although her explanation of what happened to the money she got from Abrams depends on her having given a large part of it to Reed in the subsequent July.

█ The record contains a number of other instances of contradictory and hardly credible testimony on the part of Mrs. Larkin. Perhaps the explanation is that Mrs. Larkin was frightened and confused

---

1. This earlier valid satisfaction piece was recorded July 12.

by the trying ordeal of the witness-stand. But the statute—11 U.S.C.A. § 32, sub. c.—requires that once the party objecting to a discharge has shown reasonable grounds for believing that the bankrupt has committed the alleged act—here, failure to explain the loss of assets—the bankrupt has the burden of proving that he did not commit that act. This record is full of reasonable grounds for believing the Trustee's charge. To refute it, Mrs. Larkin might, have produced witnesses to corroborate her explanation—Reed to testify that she gave him $3,000, and Dombek to testify that he gave her money with which to buy the Grand Central Parkway house—or could at least have explained her failure to call them. Since she did neither, and since her own testimony is so contradictory and incredible, she failed to carry her burden of proof.

In these circumstances, we must rule that the Referee's denial of the Trustee's Specification 6 was "clearly erroneous." The District Court also reversed the Referee's denial of four other objections to a discharge. But since any one objection, if sustained, is sufficient to bar the discharge, we need not consider the others.

Affirmed.