**In re F. P. NEWPORT CORP., Limited.**
**No. 25308.**

United States District Court,
S. D. California, Central Division.
July 6, 1954.
Appeal Dismissed Nov. 12, 1954.
See 216 F.2d 344.

Bailie, Turner, Lake & Sprague, Norman A. Bailie, George Bouchard, Los Angeles, Cal., for trustee.

Lawrence M. Cahill, Los Angeles, Cal., for bankrupt and creditors D. Day and others.

Wm. H. Neblett, Los Angeles, Cal., for respondents R. T. and Robbie Colter.

Eugene Harpole, Sp. Asst. U. S. Atty., Bureau of Internal Revenue, Los Angeles, Cal., for creditor United States.

Edmund Nelson, Los Angeles, Cal., for creditor, Bank of America N. T. & S. A.

YANKWICH, Chief Judge.

The bankrupt and certain unsecured creditors seek to review an Order of the Referee dated May 3, 1954, confirming a sale of all the assets of the bankrupt, except certain cash, to R. T. Colter and Robbie E. Colter, his wife, as joint tenants for the sum of $407,000. Involved were 25 pieces of real property and some personal property and interests in a leasehold, deed of trust and promissory notes. The estate has been in court for over nineteen years. It began as an involuntary proceeding filed on March 19, 1935. An adjudication was made on January 12, 1937. Throughout the proceedings, it has been the attitude of the bankrupt that, *if given long enough time,* its difficulties could be worked out.

This review must be considered in the light of this attitude and against the background of a "protracted" administration,—as the Judge who handled it for many years characterized it. For it was the contention of the bankrupt at the conclusion of the hearing before the Referee on the Petition to Sell that, *at all times,* matters could have been worked out differently. But the Referee correctly stated:

"A bankrupt case is a lot different than where the property is in private hands. If the man has property in his own hands not subject to legal process or creditors' claims, he can wait indefinitely. But a bankrupt estate can't. *It is the creditors' funds and they are entitled to get*

*paid sometime.* The only question here is haven't we come to the end of the trail? *How much longer are we going to put the creditors off, how much longer are they going to be put off before they get their money? If I had any evidence before me to show that you could within a reasonably short time—any definite evidence—get a better buyer, that would be an entirely different situation."* (Page 586) (Emphasis added.)

Significantly, the two most recent acts in the bankruptcy proceeding, which occurred before the present Order of Sale, were opposed *upon the same nebulous ground that, as the condition of the estate is improving, additional time might bring better results.*

So we find that when there came before the Court the question of compromising a claim of Security First National Bank of Los Angeles, one of its largest creditors, the Court delayed confirmation from April 30, 1951, to October 2, 1951, in the hope that a better offer or a different solution would be found. To the Order confirming the Compromise, dated October 22, 1951, the Honorable Paul J. McCormick, a Judge of this court of long experience, who, despite retirement, undertook the laborious task of continuing to act in this case, appended a statement to this effect:

"It is to be observed that the court has since the submission of this review deferred decision for almost four months to accord all parties interested in this bankrupt estate to submit for consideration *a plan or method that is more beneficial and equitable to the estate than the compromise under review. None such has been presented or offered."* (Emphasis added.)

A similar situation arose when the Court was confronted with the review of an Order of the Referee, dated May 26, 1952, ordering liquidation. Bankruptcy Act, § 2, sub. a(7), 11 U.S.C.A. § 11, sub. a(7). Judge McCormick kept the matter under submission from July 24, 1952, to

November 28, 1952. His Order confirming the Order of Liquidation, which has now become final, contained the following statement:

"Although thoroughly argued by the respective parties on the hearing and it appearing at that time to be warranted by the record and files of this protracted bankruptcy proceeding, it was believed by the Judge that if decision on the Referee's order of liquidation *were deferred for a reasonable period, some other lawfully-authorized equitable method of settlement would be forthcoming and duly proposed. Such other proceeding now seems to be unavailable.*" (Emphasis added.)

The present sale goes back to an Order of the Referee, dated December 9, 1953. On review being taken from it, the Court returned the matter to the Referee on January 29, 1954, with direction that he hold further proceedings towards making the conditions of the sale more definite. His direction was that

" * * * counsel for Trustee, Norman Bailie, Esq. prepare, serve on other counsel, and present to the Court for approval and signature Order referring this matter to the Referee for the purposes of conducting a hearing and if possible obtaining a definite and positive and certain bid for the property; and if the present bidder desires to withdraw his deposit within ten days, he may do so, and if he does not, his bid may be considered when further proceedings are had before the referee." (Minute Order of January 19, 1954)

A formal Order was entered on February 9, 1954, which read:

"It Is Hereby Ordered: That the proceeding for the sale of the assets of said bankrupt estate before the Court on review of the Order of the Referee in Bankruptcy, signed and filed on December 9, 1953, be and it is hereby re-referred to the Honorable Hugh L. Dickson, Referee in Bankruptcy, for the purpose of conducting *a further formal hearing in court pursuant to the Bankruptcy Act, and in such manner as his judgment and discretion shall warrant, and, if possible, obtaining a firm, definite, positive, certain bid for the property of the bankrupt estate.*" (Emphasis added.)

An amended and supplemental petition for authority to sell was filed on March 15, 1954. New notices were given. Objections were filed by the petitioners. Further proceedings were had, and, after bidding in open court, the property was sold to the Colters for the sum of $407,-000. The hearing of objections before the Referee was extensive and the transcript covering 588 pages is before me. The Referee, on May 3, 1954, filed full Findings and confirmed the sale. In addition, the Referee set forth in a 37-page opinion the reasons why, in his opinion, the sale should be made in the particular manner and at the stated price. In it the objections of the bankrupt and certain unsecured creditors, who prosecute this review, are considered fully and answered.

■ We start with the accepted principle that even before the adoption of the Federal Rules of Civil Procedure and their application to bankruptcy, it was the law of this Circuit that the Findings of a Referee on conflicting evidence would not be disturbed. See, Weisstein Bros. & Survol v. Laugharn, 9 Cir., 1936, 84 F.2d 419, 420. The Federal Rules of Civil Procedure and the General Bankruptcy Orders, 11 U.S.C.A. following section 53, now provide that the Findings of a Referee shall not be overturned unless they are "clearly erroneous". Federal Rules of Civil Procedure, Rules 52 (a), 53(c) (2), 28 U.S.C.A.; General Bankruptcy Orders 36, 47; Diamond Laundry Corp. v. California Empl. Stab. Comm., 9 Cir., 1947, 162 F.2d 398, 401; Ashton v. Sentney, 9 Cir., 1944, 145 F.2d 719, 720; McInnes v. Publishers Service Co., 2 Cir., 1949, 174 F.2d 647, 648; Knetzer v. Larkin, 2 Cir., 1949, 178 F.2d 532, 534. And see the writer's opinion

in Re Christ's Church of the Golden Rule, D.C.Cal.1948, 79 F.Supp. 42.

The chief grounds urged are that the sale is below the official appraisal, and that the Referee ordered the sale of all the estate in bulk rather than segregating the properties and selling them separately. The Referee heard evidence as to the present value of the property. And we know of no rule or practice that would warrant the Court in setting aside the Order of the Referee where he uses his best judgment both as to the method of sale and as to the sufficiency of the price at which the sale was made.

■ Mere inadequacy of price is not a ground for setting aside a sale in equity. See, Webster v. Barnes Banking Co., 10 Cir., 1940, 113 F.2d 1003, 1005; Gelfert v. National City Bank, 1941, 313 U.S. 221, 232, 61 S.Ct. 898, 85 L.Ed. 1299; Allen v. Union Transfer Co., 10 Cir., 1945, 152 F.2d 633, 635. Numerous instances exist in bankruptcy where actual values,—that is, *values in the market place,*—are far below the appraised value, and the Referee must be left free to use his judgment in determining whether a sale at a better price could be obtained. *The objectors produced no better buyer.*

■ In the present case the Referee estimated that the Colter bid was about 75 per cent of the "adjusted appraisement". (See, Supplement to Memorandum Opinion, dated April 28, 1954.) None of the other points urged by the bankrupt against the validity of the sale have merit. The Referee had jurisdiction to hear the matter. Adequate notice of the proposed sale was given. Objections were filed. Opportunity was afforded to increase the bid, and, on the hearing of objections to confirmation, the Referee very painstakingly heard evidence as to matters put in question both as to the method of sale and price, and the hopes of the bankrupt that further delay might bring more to the estate than the instant sale.

■■ In view of what precedes, it is quite evident that unless we find some legal principle in the light of which the action of the Referee is illegal, or that he drew erroneous conclusions from admitted facts, the Order must be affirmed. See, In re Christ's Church of the Golden Rule, D.C.Cal.1948, 79 F.Supp. 42; In re Eastern Oil Co., 9 Cir., 1938, 100 F.2d 341; Carr v. Southern Pacific Co., 9 Cir., 1942, 128 F.2d 764, 768; Knetzer v. Larkin, supra. And see, the opinion of Judge Carter in Re Ward Mfg. Co., D.C.Cal.1950, 89 F.Supp. 500. The objectors have pointed to no such legal principles. As stated, the Referee had jurisdiction to make the sale. He held further hearings as directed by Judge McCormick and secured a better price and more definite terms. The contention that it is still possible to reorganize the corporation is illusory. No valid plan of reorganization has been proposed during the course of this long administration. And the Referee, having ordered liquidation on May 26, 1952, an Order which has been affirmed by this court, and *has become final,* this Court is not in a position, at the present time, to undo *the finality of that act* and start once more the laborious process of attempting to reorganize the bankrupt estate after a nineteen years "protracted" bankruptcy proceeding. The Referee found specifically that the objectors have not produced any substantial person willing to advance the moneys to liquidate the estate in any other manner and that the sale of all the assets was the only alternative. (See, Findings XIV–XVI.) More, it would be a bad precedent to establish in bankruptcy for a court *at this late date* to undo the work of Referees and members of this Court who have worked long and diligently over the course of years in administering a bankrupt estate, and finally determined upon a method of terminating the long gestation of this bankrupt in bankruptcy. After all, even bankruptcy proceedings should terminate some time. That the stockholders will receive nothing is one of the inevitable incidences of investing

in a corporation which fails ultimately. And the chief concern of the bankruptcy court is the creditor. For the main object of bankruptcy is to secure the equitable distribution of the bankrupt's estate among his creditors and discharge him of his debts. See, Wilson v. City Bank of St. Paul, 1873, 17 Wall. 473, 480, 21 L.Ed. 723; Straton v. New, 1931, 283 U.S. 318, 320–321, 51 S.Ct. 465, 75 L.Ed. 1060.

 The Referee was also right in allowing interest to the unsecured creditors. In all liquidations, whether under bankruptcy or other statutes, if there be a surplus in the estate, interest is allowed on unsecured claims. See, In re John Osborn's Sons & Co., Inc., 2 Cir., 1910, 177 F. 184, 29 L.R.A.,N.S., 887; Johnson v. Norris, 5 Cir., 1911, 190 F. 459, 463–465, L.R.A.1915B, 884; American Iron & Steel Mfg. Co. v. Seabard Air Line Ry., 1914, 233 U.S. 261, 34 S.Ct. 502, 58 L.Ed. 949; Federal Deposit Ins. Corp. v. Citizens State Bank of Niangua, 8 Cir., 1942, 130 F.2d 102; Ticonic Nat. Bank v. Sprague, 1938, 303 U.S. 406, 410–411, 58 S.Ct. 612, 82 L.Ed. 926; Fujikawa v. Sunrise Soda Water Works Co., 9 Cir., 1946, 158 F.2d 490, 494–495; Hightstown Rug Co. v. National Savings and Trust Co., 1947, 82 U.S.App.D.C. 204, 162 F.2d 10.

The theory behind the cases is that regardless of any direct agreement, interest is due the creditor the moment his debt becomes due and is not paid. If the estate, whether in bankruptcy, receivership, or statutory liquidation, is insolvent, the interest, although it runs during the period when the assets are insufficient to pay the principal of the claims, will not be paid. But if there is a surplus, interest will be paid. And this rule applies whether the liquidation is brought about by the voluntary act of the debtor or by the act of creditors or statutory liquidating authorities. The objection to interest reveals once more the inconsistency in the attitude of the bankrupt in this case. On the one hand, after it has succeeded in keeping the estate in court for nearly twenty years, it still insists that the period should be extended further and the sale of all the remaining assets be denied approval by the Court. Yet it would deny to its unsecured creditors the right to receive interest during the long period of this administration. One does not have the right to do business at the expense of one's creditors. And where the creditors have been denied the right to receive ther principal debt when due, and through good management or good fortune, a surplus exists, it is more consonant with the equitable principles of bankruptcy that the surplus be used to pay interest to the creditors rather than that it be turned over to the bankrupt.

The Findings of the Referee are hereby approved and adopted as the Findings of this Court and the Order of the Referee Confirming the Sale is affirmed. Formal Order to follow.