INTRA-STATE INVESTORS CORPORATION, Appellant, *v.* NEW YORK TRUST COMPANY, Respondent.

First Department, February 11, 1937.

*Joseph K. Inness* of counsel [*Crane & Inness,* attorneys], for the appellant.

*Melber Chambers* of counsel [*Sage, Gray, Todd & Sims,* attorneys], for the respondent.

GLENNON, J.   This appeal brings up for review the dismissal of a complaint at Special Term in an action wherein appellant sought an accounting.   We have reached the conclusion, based upon the

proofs submitted, that the court should have directed the entry of a judgment compelling the respondent to account.

There is very little dispute in the main as to the facts. The respondent was the owner of a bond and mortgage in the sum of $70,000. It sold to the appellant a $10,000 junior interest on November 21, 1927. A participation agreement in which the rights of the parties were set forth was entered into on that day. Under the terms of the agreement, which incidentally was prepared by the respondent, it was authorized to collect the principal and interest on behalf of both parties, and, if necessary, to foreclose the mortgage.

The interest on the mortgage was collected by the respondent which in turn paid appellant its share. On October 19, 1932, the respondent wrote the appellant in part as follows:

" This mortgage matures on November 21, 1932, and on the application of the owner for an extension we have procured a new appraisal of the premises from Brown, Wheelock, Harris & Co., Inc., in which they set forth a present value of $90,000.

" We are willing to extend payment of our prior interest for a further term of three years with interest at $5\frac{1}{2}\%$ and provided that installment payments of $900 each are made in reduction of the principal semi-annually during the extended term and would thank you to advise us promptly if you are willing to go along with your subordinate participation with interest at $5\frac{1}{2}\%$."

In the early part of 1933 respondent took possession of the mortgaged premises under an assignment of rents. In April of that year a *lis pendens* was filed against the property by a third party who instituted an action to set aside a conveyance. In that action a receiver was appointed. In order to avoid any legal complications, the respondent deemed it advisable to foreclose the mortgage. A conference was held between Mr. David R. J. Arnold, appellant's treasurer, and Joseph L. Tighe, an officer of respondent. During the course of his testimony Mr. Tighe said, in referring to this meeting: " The reason I asked him to come over to our office was so I could break the bad news to him. I felt sorry for him." At the conference Mr. Arnold said, in answer to the assertion of Mr. Tighe that he felt that the only thing that could be done would be to commence foreclosure proceedings at once, " I told him that I thought under the circumstances that was the only thing that could be done for the protection of both of our interests." Mr. Tighe did not dispute this testimony. Later, one of the attorneys representing the respondent asked Mr. Arnold to arrange to have the appellant appear in the foreclosure action. Mr. Arnold said: " I told him in effect that he was representing

the interests of the Intra-State as well as the New York Trust Company, and he stated that that was so to a certain extent." At the conclusion of the talk it was agreed by Mr. Arnold that he would authorize his present attorneys to appear in behalf of the appellant, which was to be named a party defendant, and also waive service of process. The respondent instituted an action to foreclose the mortgage on June 6, 1933.

In due course, none of the parties named in the foreclosure action having interposed an answer, an order was entered on October 23, 1933, directing a referee therein appointed to ascertain and compute the amount due to the appellant and to the respondent. Subsequently, on November 6, 1933, a judgment was entered directing the sale of the property. The sale was held on December twelfth following, and the property was bid in by the respondent for the sum of $25,000. The respondent then caused the 2405 Crotona Avenue Corporation to be formed to take title to the property. The certificate of incorporation was filed January 23, 1934.

During the first week in February, according to one of the employees of respondent, a broker stated to him that he had a proposed purchaser who would pay about $70,000 for the property. This broker subsequently was authorized by the respondent to act on its behalf in the sale of the premises.

On February eighth respondent assigned its bid to the 2405 Crotona Avenue Corporation. It is not disputed that this corporation was owned and controlled by the respondent. On February twentieth, in response to a telephone call from the respondent's representative, the broker went to respondent's office and signed a letter whereby he agreed to waive commission in the event that title did not pass.

About ten o'clock in the morning of February twenty-third the broker and the purchasers appeared in the office of respondent. A very long discussion was had concerning terms, and an adjournment was taken for lunch. About three o'clock in the afternoon a firm of attorneys other than those who had charge of the foreclosure were notified to prepare a contract of sale. The price agreed upon was $69,750. The terms were a $2,500 down payment, and the balance to be made up of a purchase-money mortgage and $12,500 in cash upon the delivery of the deed. The contract was signed between five and six o'clock in the evening of February twenty-third, the respondent having been advised by its attorneys in the foreclosure suit that the deed had been delivered by the referee during the course of the afternoon.

The report of the referee dated February 23, 1934, was filed on February twenty-seventh. On March fifth, without notice to the appellant, the respondent made a motion for an order confirming the report of the sale and for a deficiency judgment. In its moving papers the respondent stated that its interest in the mortgage debt was $73,016.86, and that the fair and reasonable market value of the property on December 12, 1933, was $69,000; and further, that " The closing of sale under said contract is scheduled for March 26, 1934," and that the selling price was $69,750. A deficiency judgment in respondent's favor for $3,273.39 was subsequently directed and entered on the eighth day of March following.

In computing the amount due, respondent added appellant's junior interest in the bond and mortgage of $11,068.60 to respondent's interest of $61,948.26. On May twenty-fourth following, the receiver of rents in the foreclosure action, pursuant to an order of the court, turned over to the respondent the additional sum of $2,115.46. The net result of this transaction is, that the respondent, either directly or indirectly through the corporation which it owned and controlled, has received in all the sum of $71,865.46 in addition to a deficiency judgment which may or may not be collectible. It claims ownership of the entire fund, asserting that the foreclosure sale shut off all rights on the part of appellant to participate in it.

It must be conceded that the bid of $25,000 made by the respondent at the auction sale on December 12, 1933, did not represent the real value of the property when viewed in the light of the appraisal in the sum of $69,000 made by its agent as of that date, coupled with the price of $69,750 which it actually received.

Before quoting from the fourth paragraph of the participation agreement, which must be considered in connection with the other facts in this case, we believe it proper to turn to certain undisputed findings of fact appearing in the decision upon which the judgment was entered at Special Term:

" 7. Defendant and plaintiff herein were co-owners of one entire bond and mortgage referred to in the complaint.

" 8. Defendant and plaintiff herein were co-adventurers in the ownership of one entire bond and mortgage referred to in the complaint.

" 9. By the terms of said ownership agreement defendant was vested irrevocably with all the rights of the holder of said consolidated bond and mortgage, including the right to foreclose the same and receive the proceeds thereof, but plaintiff was entitled to and had the right in any and every event to an accounting

for all moneys received under said bond and mortgage by defendant or any assignee of the interest of defendant in said bond and mortgage in excess of the ownership of said defendant in said bond and mortgage."

The substance of the last finding is taken from paragraph fourth of the participation agreement which reads in part as follows: " but the party of the first part [appellant] shall in any and every event, have the right to an accounting for all money received by the party of the second part [respondent] or any assignee of the interest of the party of the second part in said bond and mortgage in excess of the ownership of the party of the second part in said bond and mortgage." We believe a fair construction of the words, " the party of the first part shall *in any and every event,* have the right to an accounting for all money received by the party of the second part  *  *  *  in excess of the ownership of the party of the second part in said bond and mortgage," indicates that the appellant has an absolute right in view of what actually happened as a result of the foreclosure sale, to be protected, as far as possible, to the extent of its junior interest. One of the *events* which was directly traceable to the foreclosure action was the sale of the property for a sum in excess of the ownership of the respondent in the bond and mortgage which was given to secure the debt due both parties.

The last sentence of the fourth paragraph reads as follows: " In case of foreclosure the party of the second part shall be under no obligation to protect the interests of the party of the first part upon a sale of the mortgaged premises, but party of the first part shall be made a party defendant in the action." That clause undoubtedly was written in by the respondent to protect it in the event that a third party should purchase the property at a foreclosure sale for a sum, the principal of which would be insufficient to pay off the appellant's junior interest. It surely did not contemplate any result such as we have here. Equity and fair dealing demand that the respondent should pay over the money which justly belongs to the appellant.

The judgment should be reversed, with costs, and judgment directed in favor of the plaintiff, with costs.

MARTIN, P. J., McAVOY, O'MALLEY and UNTERMYER, JJ, concur.

Judgment unanimously reversed, with costs, and judgment directed in favor of the plaintiff, with costs. Settle order on notice reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.