In the Matter of Bond and Mortgage Guarantee Company (408 East 18th Street, Manhattan).

Jacob I. Berman, as Trustee, Petitioner.

Supreme Court, Additional Special Term, New York County, March 7, 1944.

*Lester M. Friedman* for trustee.

*Albert Mannheimer* for junior participants.

*Henry J. Sillcocks* and *Howard S. Young* for Metropolitan Life Insurance Company.

*Edward F. Keenan* for Robert S. Dineen, Superintendent of Insurance of State of New York.

HECHT, J. The trustee of this issue moves to settle his final account and, for instructions as to the disposition of alleged surplus moneys remaining in his hands after the payment to the certificate holders of the full principal amount of their certificates, with interest to the date of such payment, and after payment to the Superintendent of Insurance of the principal amount of a subordinate certificate in the amount of $1,000 held by him, together with accrued interest.

The final account of the trustee, as amended by his supplemental affidavit, sworn to December 22, 1943, has been audited, found in good order and is confirmed. He is directed to pay the claim of the Fidelity & Casualty Company in the amount of $106.96. The final account discloses that as of October 20, 1943, the trustee had a balance of $103,826.14 on hand. On December 17, 1943, he paid $87,000 to the certificate holders and to the Superintendent of Insurance, representing the full principal amount of the $86,000 held by the public and the $1,000 certificate held by the Superintendent. This reduced the balance to $16,826.14. The foregoing payment directed to be made to the Fidelity & Casualty Company will result in adding a net refund of $2.05 to the trust estate, so that there remains in the trustee's hands a balance of $16,828.19 for distribution, subject to the payment of the commissions of the trustee and the fees of his attorney.

A dispute has arisen between the certificate holders and the holders of a junior participating interest in the mortgage foreclosed by the trustee as to the proper disposition of the balance in his hands, and it is in connection with this dispute that the trustee asks instruction.

It appears that on February 28, 1930, Title Guarantee & Trust Company was the holder of a bond and mortgage affecting these premises, on which there was due a balance of $105,000, with interest at 6%. On that date a junior subordinate interest in this mortgage, in the amount of $15,000, was assigned to Max Lederer, Rose Weinhandler and Albert Mannheimer, and an ownership agreement in the standard form was entered into, pursuant to which the title company retained a senior interest in the bond and mortgage in the amount of $90,000. It was agreed that the ownership of the title company was to be superior to that of the junior participants as if the title company held a first mortgage for the sum of $90,000, with interest thereon at 6%, and the junior participants held a second and subordinate mortgage to secure their junior interest of $15,000. It was further agreed that the title company should have all the rights of any holder of the bond and mortgage, including the right to foreclose and to receive the proceeds of the sale, but it was provided that the junior participants should have '' in any and every event '' the right to an accounting for all moneys received by the title company in excess of its ownership in the bond and mortgage. It was also agreed that in case of foreclosure the title company should be under no obligation to protect the interests of the junior participants upon a sale of the mortgaged premises.

The Title Guarantee & Trust Company sold participating certificates in the senior interest to the public, and Bond and Mortgage Guarantee Company guaranteed to the purchasers payment of the principal and interest at the rate of $5\frac{1}{2}\%$. Thereafter, Bond and Mortgage Guarantee Company was placed in rehabilitation and the Mortgage Commission of the State of New York took over possession and control of the mortgage.

In September, 1937, defaults having occurred under said mortgage, a foreclosure action was commenced by the Mortgage Commission of the State of New York, as representative of the certificate holders, and Title Guarantee & Trust Company, as record holder of the legal title. The amount then due on the mortgage was $102,000, consisting of the senior interest, which by that time had been reduced to $87,000, and the junior interest of $15,000.

The foreclosure action covered the entire mortgage, and the junior participants were named as parties defendant. They were duly served with the summons and complaint, appeared in the action by attorneys and waived service of all papers therein except notice of sale and surplus money proceedings.

While the foreclosure action was pending, a plan of reorganization was approved by this court, under which Jacob I. Berman, Esquire, was appointed trustee of the certificate issue. Thereafter the mortgage was assigned by the Mortgage Commission to the trustee, and on April 25, 1938, an order was entered substituting him as party plaintiff in place of the Mortgage Commission and Title Guarantee & Trust Company.

The trustee proceeded with the foreclosure action and judgment of foreclosure and sale was entered on August 2, 1938. The amount found due under the judgment was $116,057.17, which included the amount due on both the senior and junior interests. Notice of the sale was served on the junior participants who had appeared in the action. At the sale the property was purchased by the trustee for the sum of $5,000. He received a referee's deed on September 9, 1938. The referee's report of sale was filed on September 12, 1938.

On November 10, 1938, the trustee plaintiff made a motion for a deficiency judgment against the Nebur Construction Co., Inc., the party liable on the bond. No notice of this application was given to the holders of the junior interest in the mortgage, since they had waived service of all papers except notice of sale and surplus money proceedings. The trustee moved for a judgment for the difference between the market value of the property on the day of sale and the amount due *on the senior interest held by him.* On November 15, 1938, an order was entered fixing the fair market value of the property at $94,000, finding the amount due on the senior interest to be $97,478.88, and granting a deficiency judgment in favor of the plaintiff trustee in the amount of $3,478.88.

The trustee continued to operate the property as owner, for the benefit of certificate holders, until the summer of 1943, when he received an offer from Metropolitan Life Insurance Company for the purchase of the property for $100,000 cash net. On August 6, 1943, an order was made approving the offer to purchase, and on September 23, 1943, the trustee executed and delivered a deed to the purchaser.

The junior participants claim that they were not cut off by the sale held pursuant to the judgment of foreclosure, and that when the property was purchased by the trustee at the

sale, their right to an accounting for all moneys received by the senior holder survived and continued until the ultimate sale and liquidation of the trust *res*. They base their claim principally on the cases of *Intra-State Investors Corp.* v. *New York Trust Co.* (249 App. Div. 591, affd. 276 N. Y. 527) and *Dows Estates, Inc.,* v. *Smith* (290 N. Y. 484) in which the participation agreements contained substantially the same provisions as the agreement in the case at bar.

In *Intra-State Investors Corp.* v. *New York Trust Co.* (*supra*) plaintiff (the junior participant) was granted judgment requiring defendant (the senior participant) to account. The amount due on the senior interest was $61,948.26. At the foreclosure sale the senior participant bid in the property for $25,000, but did not then take title. After the senior participant had been informed by a broker that the latter had a proposed purchaser who would pay about $70,000 for the property, and had authorized this broker to act on its behalf in consummating this sale, it assigned its bid to a corporation owned and controlled by it and which it had organized a short time before. The broker's negotiations culminated in a contract by which the assignee corporation agreed to sell the property to the proposed purchaser for $69,750, $15,000 in cash and the balance represented by a purchase-money mortgage. This contract was closed a few hours after the referee had delivered his deed to the corporation. In addition to the proceeds of the sale, the senior participant received $2,115.46, representing the balance in the hands of the receiver of rents, thus collecting $71,865.46 in all.

Subsequent to the sale the senior participant moved for an order confirming the report of sale, and for a deficiency judgment. The moving papers stated that the *senior participant's interest* in the mortgage debt was $73,016.86, which was the aggregate of the senior interest of $61,948.26 plus the junior interest of $11,068.60. It obtained a deficiency judgment for the difference between $73,016.86 and the value of the property. The court said (249 App. Div. at pp. 595, 596): "The net result of this transaction is, that the respondent [senior participant], either directly or indirectly through the corporation which it owned and controlled, has received in all the sum of $71,865.46 in addition to a deficiency judgment which may or may not be collectible. It claims ownership of the entire fund, asserting that the foreclosure sale shut off all rights on the part of appellant to participate in it * * *. We believe a fair construction of the words, ' the party of the first part shall *in any and every event,* have the right to an accounting for all money received by the party of the second part * * * in

excess of the ownership of the party of the second part in said bond and mortgage,' indicates that the appellant has an absolute right in view of what actually happened as a result of the foreclosure sale, to be protected, as far as possible, to the extent of its junior interest. One of the *events* which was directly traceable to the foreclosure action was the sale of the property for a sum in excess of the ownership of the respondent in the bond and mortgage which was given to secure the debt due both parties.'' (Italics in original.)

In *Dows Estates, Inc.* v. *Smith* (290 N. Y. 484, *supra*), the court decided that Prudence Company, the junior participant, was entitled to the entire amount collected on a deficiency judgment by plaintiff, the senior participant. The court said (pp. 487, 488, 491) : '' The official referee found that the indebtedness on the entire mortgage was $18,542.95; that the defendant was entitled to a credit of $1,063.40, the amount of the rents paid over by the receiver to the plaintiff, leaving an aggregate indebtedness owing by the defendant of $17,479.55; that the amount due the plaintiff was $15,271.71 less the credit of $1,063.40 or a total amount of $14,208.31; that the fair and reasonable market value of the property was $15,000 at the date of the foreclosure sale; that a deficiency was owing by defendant in the sum of $2,479.55 (the difference between the aggregate indebtedness of $17,479.55 and the fair value of the property, $15,000). The official referee then apportioned the deficiency between plaintiff and Prudence by awarding to plaintiff the sum of $1,708.31 (the difference between the total due plaintiff of $14,208.31 and the sale price of $12,500) and the balance of $771.24 to Prudence. * * * In the instant case, as against Prudence, plaintiff has received property valued under section 1083-a at more than the amount of its claim. It is constitutionally entitled to no more than payment in full. (*Gelfert* v. *National City Bank*, 313 U. S. 221, 233.) Both plaintiff and Prudence have been deprived of the right to enter a deficiency judgment based on the difference between the amount due them and the sale price but together they have been given the modified or substituted remedy of taking the property at its market value plus a deficiency judgment for the difference between that value and the amount due.''

These decisions establish the principles which must guide the court in protecting the equitable rights of the junior participant, while assuring the senior participant of his full legal rights under the contract.

When a default occurs, the senior participant has all the rights of a first mortgagee. He is entitled either to have the

defaults cured prior to the sale, or else to get the property on which he has the prior lien.

In the *Intra-State* case the court found that, in substance, the senior participant had received more than the amount due as the result of an event " which was directly traceable to the foreclosure * * * sale ". Since the value of the purchase-money mortgage which was acquired upon the sale would have to be determined, the senior participant was directed to account rather than to pay over any specified sum. That consideration does not apply here, where the senior participant actually liquidated the property five years after the foreclosure sale.

If, as a result of the foreclosure sale, the senior participant acquires property valued at more than the amount of his claim, plus something additional of value like a deficiency judgment, this additional thing of value must be turned over to the junior participant, since the senior participant's claim is deemed to have been paid in full by the acquisition of property worth more than its claim. Such is the holding of *Dows Estates, Inc.* v. *Smith* (*supra*). In that case, however, the senior participant was not required to account to the junior participant for the excess in the value of the property over the amount of its claim. There the amount due the senior participant was $14,208.31, for which it acquired property valued at $15,000. It was not required to pay over to the junior participant this excess of $791.69, but only the deficiency judgment of $2,479.55.

The instant case is even stronger, because here, as previously pointed out, the court found the value of the property on the date of the sale to be $94,000, while the claim of the senior participant was $97,478.88, so that the deficiency judgment of $3,478.88 was attributable to the senior interest alone, and not to the entire mortgage, as in the *Dows Estates* case.

Any different result would be most unfair to the senior participant. To give the junior participants an interest in the property acquired by the senior participant, so that at some remote time in the future the former might come in and claim either an accounting, or a profit realized solely as the result of the efforts of the senior participant, would deprive the latter of his prior rights as provided for in the contract, without any basis for such drastic intervention by a court of equity. The respective rights of the senior and junior participants vest at the foreclosure sale except for any events which " are directly traceable to the foreclosure action ". The resale of this property five years after the foreclosure sale, at a price $6,000 in excess of the value fixed by the court at the time of such

sale, after the senior participant has been operating the property during that entire period, was not an event directly traceable to the foreclosure action.

This disposition makes it unnecessary to discuss the various theories of computation which have been argued by the parties. It may be stated, however, that I agree with the "judgment" theory, under which the senior participant (the certificate holders) would be entitled to receive their proportionate share of the mortgage indebtedness as fixed by the judgment of foreclosure and sale, plus interest at the legal rate to the date of payment.

The total mortgage indebtedness, as determined by the judgment of foreclosure and sale, was $116,057.17, with interest from July 21, 1938. Although this amount was not apportioned between the senior and junior participants in either the judgment or the referee's computation of the amount due, it may readily be computed. The total mortgage indebtedness as divided between senior and junior interests is:

*Senior Interest*

| | |
|---|---|
| Principal amount | $87,000.00 |
| Accrued unpaid interest to July 21, 1938 | 8,757.17 |
| | |
| Total amount due on senior interest | 95,757.17 |

*Junior Participation*

| | |
|---|---|
| Principal amount | 15,000.00 |
| Accrued interest thereon at 6% from 9/1/32 to 7/21/38 | 5,300.00 |
| | |
| Total amount due on junior participation | $20,300.00 |

As every judgment directing the payment of money bears interest at the legal rate from the date of entry (Civ. Prac. Act, § 481), the senior participants would be entitled to receive the sum of $95,757.17, with interest thereon at 6% from July 21, 1938, to December 17, 1943. This interest amounts to $31,057.23, making the total amount due the senior participants the sum of $126,814.40. The certificate holders have been paid the following amounts since July 21, 1938:

| | |
|---|---|
| Principal amount of certificates paid December 17, 1943 | $87,000.00 |
| Interest paid to certificate holders by trustee since July 21, 1938 | 22,334.53 |
| | |
| Total amount paid to certificate holders | $109,334.53 |

This leaves a balance due the certificate holders of $17,479.87. As this amount exceeds the balance remaining in the hands of the trustee, there exist no surplus funds which can be claimed by the junior participants.

The trustee is directed to (1) distribute all funds in his possession pro rata to certificate holders; (2) assign to each certificate holder an undivided pro rata share of the deficiency judgment and a pro rata share of the claim for rents. The order, to be submitted on notice, should contain the usual provision for terminating the trust by filing with the Superintendent of Insurance a list of certificate holders so that all future general claim dividends may be mailed directly to them. Trustee's commissions as fixed by the trust indenture and counsel fee will be fixed in the order.